DAVID McGRATH v. DETROIT, MACKINAC & MARQUETTE R. R. Co.

*Railway station grounds—Taking case from jury.*

1. Railway station grounds need not be fenced; but their extent is not fixed according to the continuous actual use of every part of them; nor can their proper limits be collaterally determined by a jury in an action against the company for the loss of a cow that came upon the track near the station, where there was no fence.

2. Where the material facts in a case are undisputed the trial judge is to apply the law to them, and if they fail to make out a case, direct a verdict for defendant.

3. The exemption of railway station grounds from the statutory requirement that the track shall be fenced is for the convenience of the public as well as of the railway company.

Error to Marquette.   (Grant, J.)   April 20.—Sept. 29.

CASE.   Defendant brings error.   Reversed.

*Ball & Hanscom* for appellant.   Statutes requiring railway tracks to be fenced do not apply to the station grounds: *Indiana &c. R. Co. v. Leak* 89 Ind. 596; *Jeffersonville &c. R. Co. v. Lyon* 72 Ind. 107.

*Egbert J. Mapes* for appellee.

SHERWOOD, J. At the time of the injury complained of in this case, the defendant's railroad extended from the city of Marquette to St. Ignace, in the Upper Peninsula. On the 20th day of August, 1883, the plaintiff's cow strayed upon the road of defendant at Dollarville, and was run over upon the main track by defendant's cars, and killed. The defendant's railroad ran east and west through Dollarville station at which there is a side track on both sides of the main track. The depot is between the south side track and the main track, and the freight-houses are south of the south siding. The south siding was about 1050 feet long. The side track on the north side is about 150 feet from the main track, at the widest point, and is called the "Mill-siding," and is very much longer than the south siding between the switches on the north side of the mill-siding, and a little west of the depot. The American Lumber Company have a saw-mill, which stands about fifty feet from the mill-siding, and its platform came up to the track, from which it loaded lumber upon the defendant's cars. The ground between the mill-siding and main track was mostly used by the mill company for piling slabs, loading and unloading logs, their lumber and other freight from the cars. The mill-siding connected at the east end with the main track. Charles H. Watson was roadmaster for the defendant and testified: "At the time the cow was killed the railroad company was engaged in handling freight for the mill company and other parties. The yard of the railroad company, that was used for freighting business and the business of the public, at that time extended east and west as far as the switches where the south side track connects with the main track, and beyond. * * * The whole length of the ground was then used by the railroad company as their depot grounds and yard. The mill-siding was then built to a point about opposite the [west] culvert and switch." The sidings were all built and owned by the railroad company, and the grounds between them appear to have been used and controlled by its agents. That they were used as the depot grounds and yard of the defendant is positively testified to by the track-master, and does not

seem to have been questioned or contradicted by anyone. The only negligence or fault of the defendant averred in the declaration, or relied on by plaintiff for recovery, is the omission of the company to fence its right of way where the injury occurred.

No exception was taken to the admission of testimony upon the trial, at the close of which counsel for the defendant requested the court to charge the jury "that the company was not required by law to fence its depot and station grounds, and that it appearing that the place where the plaintiff's cow came on the track and was killed was within the depot and station grounds of the defendant, the plaintiff had made out no case, and the verdict must be for the defendant." The court refused so to charge, but did charge the jury

"That the statute provides that every railroad company shall erect two fences on the line of its road of the height and strength of division fences required by law, with fences and cattle-guards at the highways and street crossings sufficient to prevent cattle and other animals from getting on such railroads, and until such fences, cattle-guards, etc., are constructed, the railroad is liable for the destruction of any animal that gets upon the railroad by reason of the neglect to erect such fences; and the claim of plaintiff in this case is that the defendant had no fence where it should have constructed one and where the cow got upon the track, and so they are liable."

"Our Supreme Court has decided that this statute does not apply to station and depot grounds, because these places are required both for the necessity and convenience of the railroad and of the public, and that, therefore, it was not the intention of the Legislature to require that these places should be fenced which the public convenience, and the convenience of the railroad company, require should be open. If, therefore, you find in this case that the place where this cow got upon the railroad track was a portion or part of the station and depot grounds of the defendant, the Detroit, Mackinac & Marquette R. R. Co., at that time, then the plaintiff is not entitled to recover. If they were not a part of the station and depot grounds at that time, then it was the duty of the railroad company to fence them; to put up a fence for the protection of the public and to keep cattle off. Now, a mill

or any other business carried on near a depot so as to become a part of the depot grounds, so as to be required for the convenience of such mill-owner, or owner of any such other business, would become a part of the depot grounds or station grounds, and need not necessarily be fenced. But it does not follow that the track running from the main track of the defendant to such mill placed at a distance from the railroad track, would absolve the company from fencing any such a portion of the track. In other words, such track, run to a considerable distance, would not make that side track to the mill, or the place where the mill-owner carried on his business, a portion of the depot grounds. It must be in such proximity to it as to constitute it a part of the depot grounds. The fact that there was no fence on any other part of the road than that where the cow got on has nothing whatever to do with the case. The question is, as I have stated to you, was this place where the cow got on a portion of the depot and station grounds? If it is, the plaintiff cannot recover, and your verdict should be for the defendant; if it was not, then your verdict would be for the plaintiff for the value of the cow."

The jury returned a verdict for the plaintiff, and defendant brings error.

The only question in this case is whether the injury was done at such a place as the defendant was not required by law to fence. The plaintiff concedes that depot and station grounds proper, to the extent actually used for the legitimate business of the road and a public depot, are not required to be fenced. He insists, however, that Dollarville is a saw-mill station in a new and not very much improved country, and, although a depot was erected and used occasionally by others, it was used principally by the American Lumber Company, and for its accommodation; and that the grounds north of the main track were never used as depot grounds, neither did the necessities or convenience of the public nor the railroad company require them for such use at the time the plaintiff's property was injured; and that whether or not such necessity did exist, and whether the place where the cow came upon the company's grounds was depot and station grounds, were facts to be found by the jury. The convenience of the public, as well as that of the company, is the

reason why the statute requiring the defendant to fence its track should not apply to depot and station grounds, and it would require legislative action to induce courts to hold otherwise. *Flint & P. M. Ry. Co. v. Lull* 28 Mich. 510; *Chicago & G. T. Ry. Co. v. Campbell* 47 Mich. 265; *Davis v. Burlington &c. R. Co.* 26 Ia. 550; *Rogers v. Chicago &c. R. Co.* id. 558; *Packard v. Illinois &c. R. Co.* 30 Ia. 474; *Latty v. Burlington &c. Ry. Co.* 38 Ia. 250; *Blair v. Milwaukee &c. R. Co.* 20 Wis. 254; *Indianapolis &c. R. Co. v. Caldwell* 9 Ind. 397; *Lloyd v. Pacific R. Co.* 49 Mo. 199; *Swearingen v. Missouri &c. R. Co.* 64 Mo. 73; *Galena &c. R. Co. v. Griffin* 31 Ill. 303; *Indianapolis &c. R. Co. v. Christy* 43 Ind. 143; *Jeffersonville, M. & I. R. Co. v. Beatty* 36 Ind. 15. What amount of land may be taken and held for the use of a railroad company in the exercise of its franchise is always settled when it secures its, right of way, and when it is once acquired the company may designate and set apart so much thereof as it may deem necessary and proper for depot and station purposes, as the exigencies of its business may require at the points where it locates its stations. The territory required for this purpose, when ascertained and set apart, constitutes what is called depot and station grounds, and varies in amount usually according to the location and amount of business to be done, and the necessities and convenience of the company and public in doing their business at the station. These grounds, as we have seen, are not required to be fenced by the company, and of course cannot be made to extend from station to station. They are usually quite limited in extent, and are intended to furnish sufficient space for construction of side tracks, offices, passenger depots, freight-houses, and other buildings, ways, and yards suitable and convenient for the speedy and safe reception and discharge of passengers and freight, and the storage of cars and other property belonging to the company and persons doing business with the road. The existence or extent of these grounds is not to be determined by the continued actual use of any part thereof. When station grounds are laid out, their contemplated future

use is not unfrequently of more consideration than the actual demands at the time in determining their shape and extent. The construction and operation of new lines of railroad always tend to the development of the resources of the section through which it passes, and is followed by increased population and business. This is a matter of such common observation that ordinary prudence and foresight determines such an appropriation for station purposes as shall be commensurate with such reasonably anticipated growth. When these grounds are appropriated and set apart by the company it would be neither safe nor wise to allow their limits to be curtailed or extended by a jury in a proceeding where they collaterally come in question, as in this case, upon the mere showing that any part of the same was not in actual use at any particular time.

The testimony in the case is very brief, and the main facts stand undisputed. There is no question but that the plaintiff's cow was on the defendant's right of way when first seen, and from that time until she was killed she was upon the defendant's station grounds. Where the material facts in a case are undisputed or admitted, it is the duty of the court to apply the law, and if such facts fail to make out the plaintiff's case, the court should direct a verdict for the defendant.

I think the request of counsel for defendant should have been given to the jury, and the judgment should be

Reversed, and a new trial granted..

The other Justices concurred.