THE ATCHISON, TOPEKA & SANTA FÉ RAILROAD COMPANY v. CLAY SHAFT.

### *Motion for Rehearing.*

THIS case is reported in 33 Kas., pp. 521, *et seq.*, where the facts found by the trial court are fully stated. May 16, 1885, the railroad company filed a motion for a rehearing. February 4, 1886, this motion was overruled — HORTON, C. J., dissenting, and filing the following opinion:

I do not agree with my brethren in refusing a rehearing. In the words of the opinion originally delivered, "In the nature of things, there must be some limitations upon the terms of the language used in chapter 94, Laws of 1874." (33 Kas. 521.) It is conceded in that opinion that railroad companies are absolved from complying with the express terms of the statute where some paramount interest of the public intervenes, or some paramount obligation or duty to the public rests upon the railroad companies, rendering it improper for them to fence their roads. Thus, it is improper for a railroad company to fence its road where the same crosses a public street or highway; and this is true even where the place crossed is only a highway *de facto*. A railroad depot is of such a public character that it is improper for a railroad company to fence its road at such a place.

I go further, and am of the opinion that the railroad company was not required to fence the place where the animal in

this case was killed. The animal got upon the station grounds of the company from a public highway, and was killed at a place which formed a part of the station grounds and was within the switch limits of the station of the company. The court finds that this place could not have been fenced or inclosed to keep out cattle, without putting in cattle-guards within the switch limits, and that putting in cattle-guards would have been dangerous to the lives of the employés of the railroad company, who would be obliged to switch at that place for the purpose of side-tracking and making up trains.

The stock law of Indiana, so far as any question here is involved, is similar to ours. (*Railroad Co. v. Mower,* 16 Kas. 573; §§ 4027, 4032, Rev. Stats. of Indiana, 1881.)

In the case of *Railroad Co. v. Willis,* 93 Ind. 507, it is held:

"A railroad company is not required by the statute, § 4031, R. S., 1881, to fence its road at places where such fence interferes with its own rights in operating its road or transacting its business, nor where the rights of the public in traveling or doing business with the company are interfered with, or where such fencing would imperil the lives of its employés, and no recovery can be had under the statute for stock killed by its locomotives or cars at such places on the line of its road."

In *Railway Co. v. Kneadle,* 94 Ind. 454, it is said:

"The adjudged cases declare that a railroad company is liable to its servants if it negligently or wrongfully makes unsafe and dangerous places in its tracks. Its duty, with respect to its tracks, is much the same as that to which it is held respecting its machinery. In the recent case of *Railroad Co. v. Willis,* 93 Ind. 507, we held that a railroad company was not bound to place cattle-guards where they would endanger the lives of their employés. It seems to us that any other conclusion would be radically wrong, for it would place the company in the dilemma of becoming liable to its servants, if it constructed cattle-pits at places where they would be dangerous, and liable to cattle-owners if it neglected to provide such guards."

Michigan has a similar statute. (Howell's Annotated Statutes, 1882, § 3377.) The supreme court of that state, in deciding *McGrath v. Railroad Co.,* 24 N. W. Rep. 854, said:

U. O. Prickett v. A. T. & S. F. Rld. Co.

"The only question in this case is, whether the injury was done at such a place as the defendant was not required by law to fence. The plaintiff concedes that depot and station grounds proper, to the extent actually used for the legitimate business of the road and a public depot, are not required to be fenced. He insists, however, that Dollarville is a saw-mill station in a new and not much improved country, and although a depot was erected and used occasionally by others, it was used principally by the American Lumber Company, and for its accommodation; and that the grounds north of the main track were never used as depot grounds, neither did the necessities or convenience of the public nor the railroad company require them for such use at the time the plaintiff's property was injured; and that whether or not such necessity did exist, and whether the place where the cow came upon the company's grounds was depot and station grounds, were facts to be found by the jury. The convenience of the public, as well as that of the company, is the reason why the statute requiring the defendant to fence its track should not apply to depot and station grounds, and it would require legislative action to induce courts to hold otherwise. . . .

"What amount of land may be taken and held for the use of a railroad company in the exercise of its franchise is always settled when it secures its right-of-way, and when it is once acquired the company may designate and set apart so much thereof as it may deem necessary and proper for depot and station purposes, as the exigencies of its business may require at the points where it located its stations."

The cases of *Railroad Co. v. Willis, Railway Co. v. Kneadle,* and *McGrath v. Railroad Co.,* were not cited or referred to upon the first presentation of this case to the court.