Dinwoodie, Respondent, vs. Chicago, Milwaukee & St. Paul Railway Company, Appellant.

*November 4 — November 22, 1887.*

*Railroads: Fences: Depot grounds: Killing of cattle: Court and jury.*

1. In an action for the killing of an ox by reason of defendant's failure to fence its right of way, plaintiff's testimony that there were ox tracks leading from the west, across a ditch, up an embankment, and across the side track of the railroad to the main track, where the ox was killed, and that he found no cattle tracks at any other place on the right of way, is *held* to have warranted the submission

Dinwoodie vs. Chicago, Milwaukee & St. Paul R. Co.

to the jury of the question whether the ox came upon the right of way at the point where such tracks were seen.

2. Whether the defendant's right of way at a point sixty rods from the station building, where there was a side track in addition to the main track, was necessary or convenient and actually used for loading or unloading freight, so as to make it a part of the depot grounds and thus relieve the company from the duty of fencing it, is *held* to have been in this case a question for the jury.

APPEAL from the Circuit Court for *Portage* County.

Action to recover damages for the killing of an ox, which it is alleged strayed upon the defendant's railroad track at a point where the defendant was bound to fence the same but had neglected to do so. The facts will sufficiently appear from the opinion. The plaintiff had a verdict for $75, and from the judgment entered thereon the defendant appealed.

The cause was submitted for the appellant on the brief of *John W. Cary*, attorney, and *Burton Hanson*, of counsel, and for the respondent on that of *Cate, Jones & Sanborn*.

Counsel for the respondent argued, among other things, that when a railroad company asserts that the place was one which it was not bound to fence, it must affirmatively establish that fact. *Evansville & T. H. R. Co. v. Mosier*, 101 Ind. 597; *Cincinnati, I., St. L. & C. R. Co. v. Parker*, 109 id. 235. As to what is included in depot grounds which a railroad company is not bound to fence, they cited *Fowler v. Farmers' L. & T. Co.* 21 Wis. 77; 1 Rorer on Railroads, 486; 58 Mo. 78; 67 id. 73; *Peyton v. C., R. I. & P. R. Co.* 70 Iowa, 522; *Greeley v. St. P., M. & M. R. Co.* 33 Minn. 136; 1 Thomp. on Neg. 521; *Smith v. M. & St. L. R. Co.* 33 N. W. Rep. (Minn.), 316.

COLE, C. J. The errors relied on for a reversal of the judgment are (1) that there is no testimony which shows or tends to show that the ox which was killed got upon the right of way at a point where the defendant company was

bound to maintain·a fence and did not; (2) that the undis-
puted testimony shows that the ox was killed upon its
depot grounds.

· The fact is admitted that the animal was killed about
sixty rods north of the station building at Hutchinson; that
at this point the right of way was fenced on the east side,
but not on the west.  It appears from the testimony that
there was a ditch and an embankment at this point, but not
sufficient to prevent cattle from coming on the track from
the west.  The evidence as to where the ox got upon the
track is the testimony of the plaintiff himself, who said, in
effect, that he examined the track for the purpose of seeing
where the ox came upon it; that cattle tracks came from the
west side of the right of way, across the side track, and
upon the main track of the railroad.  The witness did not
see the ox go upon the track, but he said the tracks which
he saw were ox tracks, leading straight from the west side
across the switch track and upon the main track, where he
was killed.  The witness saw these cattle tracks leading
through the ditch and up the embankment to the railroad
track.  He saw cattle tracks at no other place on the right
of way.  Now this evidence is not conclusive as to the
point where the ox came upon the railroad track, but it was
sufficient to warrant the jury in finding that the animal
came upon the defendant's track from the west at that
place.  Were one to trace cattle tracks plainly made in the
dirt or soil for several feet from the west line of the right
of way directly across a ditch and embankment upon a rail-
road track, as the witness said he did, he would·naturally
conclude that an animal had there passed upon the railroad.
Such a conclusion or inference would not rest in mere con-
jecture, but would be supported by visible signs raising a
strong probability of the fact, such as men act on in the
affairs of life.  It is true that the witness could not swear
that these cattle tracks which he saw were made by his

ox, because he did not see the ox go there. Still it did not appear that any cattle tracks were seen at any other places on the right of way between the point where the ox was killed and the depot building south. We think, therefore, it was not error to submit to the jury the question, upon all the evidence, whether the plaintiff's ox did come upon the railroad track from the west near where he was killed. The probabilities of the case tend to show that he did. The trial court directed the jury that, to justify a finding for the plaintiff, they must be satisfied affirmatively from the weight of the whole evidence that the ox got upon the defendant's right of way at some point other than the depot grounds, and was killed outside the limits of such grounds. We surely are not warranted in disturbing the verdict upon the question thus fairly submitted.

Upon the other question, does the testimony show that the ox was killed upon the defendant's depot grounds? The statute makes it the duty of a railroad company to erect and maintain on both sides of its road, depot grounds excepted, good and sufficient fences, to prevent cattle from straying upon the right of way. Sec. 1810, R. S. The statute does not attempt to define what are depot grounds. We must therefore refer to the sense in which these words are used in the authorities. In *Fowler v. Farmers' L. & T. Co.* 21 Wis. 78, it was said a railroad depot is a place where passengers get on and off the cars, and where goods are loaded and unloaded; and all grounds necessary or convenient and actually used for these purposes are depot grounds. The learned circuit judge gave substantially the same definition to the words " depot grounds," to guide the jury in determining the question whether the ox was killed within the limits of such grounds. We have already said the ox was killed sixty rods north of the station building. In addition to the main track running north there was a side or spur track on the west side, which extended about

one hundred rods parallel with the main track, which was used for storing cars. There were also two other side tracks and switches; one of these tracks ran off to a saw-mill, the other to a planing-mill, both mills being east of the main track, and quite a distance from the station. It does not appear that the spur track sixty rods north of the station was used for loading or unloading freight, though towards the end, where the ground was level, it had been used occasionally for loading ties. But still where the ox was killed we infer that the ditch and embankment would render it difficult, if not impossible, for teams to get up to the spur track, either to load or unload freight. The statute relieves a railroad company from the duty of fencing its depot grounds, because it would be inconvenient to the public and company to have them fenced, inasmuch as it would seriously interfere with the loading and unloading of cars and handling of freight. It is necessary to have free access to and through such grounds to deposit goods for transportation or receive goods ready for delivery. It cannot be said, as a matter of law, that the depot grounds included the spur track sixty rods north from the station, or that the right of way along there was properly embraced in depot grounds. One thing is certain, it was fenced at that point on the east side of the right of way. But it was for the jury to determine, from all the facts and circumstances, whether the railroad at the point where the ox was killed was within the limits of the depot grounds as defined by the court, or not. Were the grounds at that place used in connection with the depot for loading or unloading freight, or were they necessary or convenient and actually used for such purposes? If they were, then they were included in the depot grounds, where the company was not bound to maintain a fence; but if not, they were no part of such grounds, and the company was required by the statute to fence them. It seems to us it was a question

essentially for the jury, and not the court, to determine whether it was necessary to leave the right of way unfenced at that place in order to transact the business of the company in receiving and delivering goods. It is not pretended that it was a place where passengers got on and off the cars. The court was right in submitting the question to the jury, as it did.

The liability of the company is predicated upon its failure to fence its right of way as the law requires. Upon the whole record we see no reason for disturbing the verdict, and the judgment of the circuit court is therefore affirmed.

*By the Court.*— Judgment affirmed.