RABIDON *v.* CHICAGO & WEST MICHIGAN RAILWAY CO.

1. RAILROAD COMPANIES—FENCES—YARD LIMITS.

A portion of a railroad right of way lying about a mile distant from freight and passenger depots in a thickly-settled locality is not too remote to come within the rule relieving railroad companies from the duty of fencing their "yard limits" or "depot grounds," if such portion is in fact within the yard limits as fixed by the company, and is used for switching purposes, so that the erection of a fence along the right of way, with the incident cattle-guards and wing fences, would render the place dangerous to employés.

2. SAME—EVIDENCE.

The opinion of a former railroad employé that a specified point in the right of way in a city is not a part of the depot and station grounds, such as the company is relieved from fencing, is insufficient to raise a question for the jury, where the positive testimony adduced by the company shows that such point is within the yard limits as it has defined them, that switching is done there, and that the erection of the statutory fences would endanger employés.

3. SAME.

Whether a portion of the right of way of a railroad company is or is not within the "yard limits" depends upon whether it is reasonably necessary for switching purposes, or liable to become so; and the determination of the question does not necessarily depend upon distance from depots, or the frequency with which switching is done at the time of the inquiry.

MOORE, J., dissenting.

Error to Muskegon; Russell, J. Submitted October 14, 1897. Decided December 21, 1897.

Case by Louis Rabidon, an infant, against the Chicago & West Michigan Railway Company, for personal injuries. From a judgment for plaintiff, defendant brings error. Reversed.

*Frank H. Smith*, for appellant.

*Macdonald & Marr*, for appellee.

GRANT, J.   Plaintiff, who was five years old, passed from the highway opposite his father's house onto the railroad right of way, which was unfenced, caught hold of one of the box cars of a train, and was drawn under the cars and injured.   Plaintiff, at the conclusion of the evidence, withdrew from the consideration of the jury all grounds of negligence except the failure to fence the right of way as provided by the statute.   The defendant insisted that the portion of its right of way where the plaintiff was injured was within its station grounds or yard limits, which the law did not require it to fence.   This presents the sole controversy.   The court below left it to the jury to determine whether this was a necessary part of its station grounds or yard limits, and therefore exempt from the statutory duty to fence.

That portion of the city of Muskegon is fairly well settled. It is laid out in streets and blocks, the distance between Hamburg and Israella streets being 264 feet.   Defendant's road runs north and south, parallel to and adjoining Ambrosia street.   Plaintiff lived on the northwest lot of the block, on the east side of the street.   Directly opposite his residence was a cooper shop, with a side track running to it; the switch being in close proximity to Israella street. Directly south of Israella street is a large manufacturing establishment.   There are three side tracks,—two upon the east and one upon the west side of the main track. The main switch to these side tracks is located in close proximity to Israella street.   The following facts are established:

1. The right of way at this point is within the yard limits, as fixed by the defendant.

2. To inclose the right of way with wing fences and cattle-guards on both sides of each street would render switching and the management of trains at this point dangerous to employés.

3. Plaintiff's own expert witness shows that "yard

limits are the space within which yard engines may work without receiving orders, as against other trains."

4. The right of way at the point of the accident was within the yard limits, as thus defined.

The father of the plaintiff testified:

"The switch engine runs up there frequently, and draws freight cars to the Monroe Manufacturing Company. It goes at irregular intervals; is likely to run up almost any time."

The chief engineer of the defendant testified as follows:

"It becomes necessary, in handling trains with a switching crew, to protect that crew against trains on the main line, other than the ordinary way of protecting a train on a main line outside; and a yard-limit sign is placed at a proper distance outside of the extreme limit to which the switch engines go. And the men are notified, also, of the point of the yard limit, which is at a sufficient distance outside of where switch engines have to go in doing their switching to protect them against main-line trains. That sign which indicates the yard limits is a notice to incoming trains that they are likely to meet switching engines any time after passing that limit. Switching engines are allowed to work over the track, within the yard limits, without special orders, and without the precaution of flagging. * * * Men have to couple and uncouple cars at those points, pass back and forth from the train to the switch; and they are quite liable to be caught in anything of the nature of a cattle-guard, and thrown down and injured, especially in the darkness."

This evidence is uncontradicted. It is clear that defendant's employés who do the switching would be compelled to cross over these cattle-guards. Plaintiff's counsel appear to recognize this fact, and advance the proposition that fencing does not necessarily mean wing fences and cattle-guards at highway crossings. To meet the case made by the defendant in regard to switching, and the danger from inclosing its right of way with fences and cattle-guards, they introduced one witness who had been a railroad employé; and he testified that, in his opinion, "the spot where the cooper shop is, is not a part of the depot and station grounds."

It appears that the depots—passenger and freight—were nearly a mile distant. Distance from depots is not the controlling consideration in determining "depot grounds" or "yard limits," which are synonymous terms. It is well known that in large cities these grounds extend for several miles. Neither does the question of frequent or infrequent use for switching purposes control. The question is, Are they reasonably necessary for that purpose, or liable to become so? It is not necessary to go outside our own decisions, in determining this question. It was settled in *McGrath* v. *Railroad Co.*, 57 Mich. 555. In that case the opinion was delivered by Mr. Justice SHER-WOOD, and concurred in by the entire court. It was there said:

"The existence or extent of these·grounds is·not to be determined by the continued actual use of any part there-of. When station grounds are laid out, their contemplated future use is not unfrequently of more consideration than the actual demands at the time in determining their shape and extent. The construction and operation of a new line of railroad always tends to the development of the resources of the section through which it passes, and is followed by increased population and business. This is a matter of such common observation that ordinary prudence and foresight determines such an appropriation for station purposes as shall be commensurate with such reasonably anticipated growth. When these grounds are appropriated and set apart by the company, it would be neither safe nor wise to allow their limits to be curtailed or extended by a jury in a proceeding where they collaterally come in question, as in this case, upon the mere showing that any part of the same was not in actual use at any particular time."

This was followed and approved in *Grondin* v. *Railway Co.*, 100 Mich. 598; *Wilder* v. *Railway Co.*, 70 Mich. 382; *Rinear* v. *Railroad Co.*, Id. 620; *Schneekloth* v. *Railway Co.*, 108 Mich. 1. Moreover, switch grounds, as well as stations and freight depots, are exempt from constructing fences. 3 Elliott, Railroads, § 1194. It is there said:

"The exemption of switch grounds is founded on the danger to employés which would necessarily result were the tracks fenced. The safety of the employés at points where they almost continually pass up and down the track in the performance of their duties is far more important than would be the safety afforded to animals and property from the erection of fences at such tracks."

See, also, *Flint, etc., R. Co.* v. *Lull*, 28 Mich. 510.

The opinion of plaintiff's witness was of no value. The question was confined to the spot where the cooper shop is. It did not meet or contradict the defendant's evidence that switching was done there; that it was part of the yard limits, as defined by the same witness; and that fencing with wing fences and cattle-guards would be extremely dangerous. In fact, both counsel and the witness appear to have recognized the danger in thus fencing; for the attention of the witness is immediately drawn to the construction of the fence on the east side of the right of way along Ambrosia street, and particularly where the cooper shop is, and he said:

"In my opinion, it would not interfere with railroad operations at all to maintain a fence on the east side of the railway right of way, and particularly where the cooper shop is."

The proposition is seriously made that the defendant was required to construct a fence along the east side of its right of way, in front of plaintiff's house, without wing fences or cattle-guards, as a protection to children living on the east side of the highway. The position is untenable. The statute requires no such fence. The common law imposes no duty to fence. Justice COOLEY said in *Marcott* v. *Railroad Co.*, 49 Mich. 99, "We have no statute requiring fences for protection against personal injuries." If, however, such protection were contemplated, the statutory fence must be constructed, that is, one with cattle-guards and wing fences. If a fence had been maintained along the street which would serve to keep a boy out, a few steps would have taken him around the end of the fence, to the right of way. It is absurd to say that

such a fence would serve as a protection. Under this record, the defendant had conclusively established that this was a part of its yard limits, and that it was exempt from fencing. We do not intend to express any opinion upon the question whether the failure to erect and maintain such a fence as the statute requires is a negligent act, as against persons who enter upon the right of way and are injured. That question is not raised by defendant, and is not before us.

Judgment reversed, and new trial ordered.

LONG, C. J., MONTGOMERY and HOOKER, JJ., concurred with GRANT, J.

MOORE, J. (*dissenting*). In September, 1895, the plaintiff, a boy about five years old, was living with his father on the east side of Ambrosia street, in Muskegon. North of his father's residence, Hamburg street crossed Ambrosia street at right angles. Israella street was the next street south of Hamburg street. West of Ambrosia street, and parallel to it, was the main track of defendant company. West of the track was a cooper shop fronting on Hamburg street, with a side door near the rear end of the shop, opening upon defendant's right of way. A short distance from the shop, coming from the south, ran a side track to the cooper shop. This siding would hold two or three freight cars, and freight could be passed through the side door to and from the shop, to and from the freight cars, by using a gang-plank. The residence of Mr. Rabidon fronted on Ambrosia street. There was no fence between Ambrosia street and the main line of defendant company, and no cattle-guards on Hamburg or Israella streets. The cooper shop is something more than a mile from the freight house of defendant company, and still farther from its passenger station. South of the cooper shop, something more than a block, was the Monroe manufacturing plant, running to which were several side tracks from the main line. This portion of Muskegon was quite thickly settled.

On the day in question, the plaintiff passed from Ambrosia street upon the right of way of defendant company, with two boys older than himself, and was lifted by one of them to a seat upon the door sill of the cooper shop. This door was from two to four feet above the ground. A freight train came slowly along, and, after the engine had passed, the plaintiff ran and caught upon some projection from one of the cars, for the purpose of riding, and was carried forward, towards the switch, until he finally fell and received severe injuries. It is claimed on the part of the plaintiff that the injury to the child was the result of the neglect of the company to build a fence on the westerly line of Ambrosia street, from Hamburg to Israella street. It is the claim of the defendant that it is under no obligation to build a fence on Ambrosia street, and cattle-guards on Hamburg and Israella streets, for the reason that the convenience of the public and the safety of the employés of the company require that these spaces should be uninclosed. Each of the witnesses who so stated testified on the cross-examination that the construction of a fence on Ambrosia street would not interfere with the convenience of the public, the operation of the trains, or the safety of the employés, unless there were wing fences and cattle-guards on Hamburg and Israella streets. It was claimed that cattle-guards at those streets would make the work of the employés of the company more hazardous, and the reason assigned was that it was necessary to pass over the street crossings, in coupling and uncoupling cars, to reach the sidings at the cooper shop and at the Monroe manufacturing plant.

It was also claimed by the railroad that this ground was in the yard limits of the road; the witness so testifying explaining that yard limits were those portions of the road where the switching engine and crew might work without special orders, and without the precaution of flagging. This witness claimed that the entire road of the company in Muskegon was within the yard limits. Testimony was offered on the part of the plaintiff that it

would not inconvenience the public, or interfere with the operation of defendant's trains, or the safety of its employés, to have constructed a fence between Ambrosia street and defendant's right of way. Plats and photographs of the premises were introduced in evidence. There was no testimony offered upon the part of the defendant showing how much the company used the siding at the cooper shop, or how frequently cars were coupled or uncoupled between Hamburg and Israella streets. The witness made the general statement that it was not practicable or safe to fence the road at this place. There was testimony on the part of the plaintiff tending to show that the cooper-shop switch was not used more than once a month, and that this portion of the road was no part of the depot and station grounds, and that the switching into the freight yards of the company, and the making up of its trains, was not done within a long distance of this locality.

The judge charged the jury, in part, as follows:

" It is the duty of the railroad company to maintain fences on each side of its railway track, and to maintain cattle-guards at highway crossings and street crossings. In other words, it is the duty of the railroad to inclose its tracks by fences on each side, and by guards where the streets and highways come, so that its track between those places would be inclosed. There are certain exceptions to that law, and one question is whether this particular place comes within that exception. It is claimed on the part of the plaintiff that it was the duty of the railroad company to establish a fence along the westerly line of this street,—a straight fence, 18 feet from the railroad track. Gentlemen, that would be no compliance with the statute at all. The statute provides, as I have said, that the railroad track should be inclosed. Now, was it proper to inclose this track ? I am going to submit that question to you.

"The evidence shows here that there is a switch between these two streets near the cooper shop, and a cooper shop, which is used sometimes, and sometimes it is unused. The first question for you to take into consideration is whether it would inconvenience the railroad company

in the operation of its business, and the public, to go and inclose that switch,—the shops there, from street to street, —on each side. If you find that it would, the company is not required to furnish a fence at all. If you find that it would not, the next question that you may take into consideration is as to whether if a fence were maintained there on each side, and the proper guards put in to make an inclosure, whether it would be dangerous to the parties who are operating the railroad,—the men who are working on the trains. If you find that it would not be proper to put those things in there for the purpose of completing the fence, without being dangerous to the employés of the railroad company, so that it might be responsible for an injury to them if one occurred, then it would not be required to fence. In that case, plaintiff cannot recover at all. You will take these two propositions into consideration: *First*, would it inconvenience the railroad company in the operating of their trains and the switch there, and that factory, and the public, or either of them, so it would be inconvenient and improper for them to have that inclosed in a fence? If so, the plaintiff cannot recover at all, because they are not required to fence it. *Next*, if they did that, and put in the guards, as required by the statute, at the street crossings, would it be dangerous to the parties who are operating trains, in switching or otherwise, using that switch or the main track? If so, they were not required to put it in, and not required to do the fencing. And upon either of those propositions, if you find that it would be improper to have it inclosed and have those guards in, plaintiff cannot recover. If you find that it would be proper, and would not inconvenience the railroad company or the public in the operating of this cooper shop, and their road in connection therewith, and the approaches, etc., to it, to the cooper shop, by the public, and that it would be proper to have a guard in there, and would not be dangerous to those who are operating the train or doing the switching, then it was the duty of the railroad company to inclose this with a fence.

"The next question to be taken into consideration is as to whether the fact,—if you find that it was the duty of the railroad company to maintain a fence there,—whether that fact alone was the cause of this child's being injured. If it was not, then the plaintiff is not entitled to recover at all. He is not entitled to complain unless he was injured by reason of that; and, for the purpose of determin-

ing that question, you should take into consideration the age of this boy, the kind of a fence that it is the duty of the railroad company to maintain (you have heard that section read, so that you know what kind of fence,—an ordinary board fence four feet and a half high); whether, if a fence had been there, that fact would have kept this boy off from the track. If you say that it would not, why, of course, that ends the case, so far as the plaintiff is concerned; he would not be entitled to recover. The boy would probably have climbed over the fence; if you are satisfied of that, or that it would not have stopped him,—he would have gone around the end, or got onto the track in some other way,—of course he has no right to complain because there was no fence there.  *  *  * If you find that the boy would probably have gotten over the fence and gone down on the track, then there are certain other things for you to take into consideration. It is conceded, so far as this case is concerned, that the railroad company were operating their trains just exactly as they had a right to operate them; that they were not running too fast; that they were keeping proper lookouts, and doing everything that was necessary for them to do to protect themselves, except for this fence.  *  *  *  If, after taking the age of the boy, and all the surroundings, and those remarks, into consideration, you are satisfied that the boy at that time knew that it was dangerous for him to get onto that train, why, he cannot recover at all. Because he ran into danger, he would be negligent himself.  *  *  *  And if you find that he knew, after making this talk there, notwithstanding the fence,—if he knew, after having this talk there, that it was dangerous for him to touch that train and do what he was going to do,—he cannot recover at all; he is not entitled to recover. Railroad companies are no insurers of parties, of boys, who are seeking injury to them, boys who are seeking to catch onto railroad trains, if they know better; and that is one of the questions in this case."

The court was requested to instruct the jury that defendant was not obliged to fence its road at this point, and his refusal to do so is assigned as error. Where the material facts in a case are undisputed, and those facts show that the portion of the road unfenced is a part of the station or depot grounds, then it is undoubtedly the duty of the court to instruct the jury that the railroad is not

obliged to fence. *McGrath* v. *Railroad Co.*, 57 Mich. 555; *Grondin* v. *Railway Co.*, 100 Mich. 598. I am unable to find a case, decided by this court, where, under the testimony shown, it was doubtful whether the place of the accident or the cause of the injury for which suit was brought was within the station or depot grounds, within the definition given by this court of what constitutes station and depot grounds. In *Terre Haute, etc., R. Co.* v. *Schaefer*, 5 Ind. App. 86, the railroad company claimed that its road could not properly be fenced, for the reason that to have fenced it there would have included the putting in of cattle-guards, which would have endangered the safety of its employés in the use of that part of the railroad in switching and making up trains; and it was held by the court that, as the evidence upon that question was conflicting, the verdict·of the jury would not be disturbed. In *Cox* v. *Railroad Co.*, 128 Mo. 362, it was held that the burden of showing, as a reason for not fencing, that so doing would endanger the employés, was upon the defendant, and that, where the testimony was conflicting, it raised a question of fact, to be decided by the jury. See *Toledo, etc., R. Co.* v. *Thompson*, 48 Ill. App. 36; *Indianapolis, etc., R. Co.* v. *Clay*, 4 Ind. App. 282. In *Brandenburg* v. *Railroad Co.*, 44 Mo. App. 224, it is held that when it is fairly debatable, under the evidence, whether it is necessary to leave unfenced a part of its road, to avoid danger to its employés, and for the safe and convenient transaction of its business with the public, it raises a question of fact, which should be submitted to the jury. See, also, *Toledo, etc., R. Co.* v. *Woody*, 5 Ind. App. 331.

In the recent case of *Grosse* v. *Railway Co.*, 91 Wis. 482, it was said that:

" No doubt, the question of what or how much ground at any particular station will be necessary for the convenience of business at that station must, in the first instance, be determined by the company itself; but that determination cannot, considering the nature of the interests involved, in all cases be conclusive. * * * Cases may

arise in which it may properly be a question for the jury whether the place where the animals were injured was within the limits of grounds which were reasonably necessary for depot uses. ”

And in that case it was said that it was a question for the jury. The following cases are to the same effect: *Dinwoodie* v. *Railway Co.*, 70 Wis. 160; *McDonough* v. *Railroad Co.*, 73 Wis. 223.

In *Flint, etc., R. Co.* v. *Lull*, 28 Mich. 514, the court cited with approval a case in which it was held that while the statute requiring fences has no application to points where it would be illegal or improper that roads should be fenced, such as the crossings of streets or alleys in a town, or at mills, etc., where public convenience requires the way to be left open, yet that this is the limit of the exception, and the track within the limits of a city or town, at points where no such reasons apply, is as much within the statute as a track elsewhere. And in the same case it is held that, if it is claimed that any reason of public or private convenience requires the right of way to be unfenced, it is for the railroad company to show it.

This accident occurred in a thickly-settled portion of the city, one mile from the freight station of the defendant company, near a short siding that was used to accommodate a cooper shop employing only from two to four men, and which furnished to defendant road but a small amount of freight, and the burden was upon defendant to show that it was not required to fence its road at this point. The testimony was conflicting. Under such circumstances, a question of fact was raised, which was properly left to the jury. The jury found against the defendant, under a charge so favorable to the defendant that it has no right to complain of it.

I think the judgment should be affirmed.