117  238
148  167
CORNELL v. MANISTEE & NORTHEASTERN RAILROAD CO.

1. RAILROADS—RIGHTS OF WAY—FENCES—STATUTES. .
   Statutes requiring railroad companies to fence their rights of way are not applicable to places properly devoted to the receiving or unloading of freight.

2. SAME—FOREST PRODUCTS—LOADING GROUND.
   A railroad company, whose line runs through a new and heavily timbered country, may properly leave unfenced a portion of its right of way a mile and a half from the nearest station, as a storing and loading place for forest products.

3. SAME—INSTRUCTIONS.
   An instruction in an action against a railroad company for the value of an animal killed on its track, cautioning the jury against a popular prejudice against railroads, is not improper when coupled with an injunction to be impartial and to decide justly.

Error to Manistee; McMahon, J.  Submitted April 22, 1898.  Decided May 24, 1898.

Case by David A. Cornell against the Manistee & Northeastern Railroad Company to recover the value of stock killed on defendant's track.  From a judgment for defendant, plaintiff brings error.  Affirmed.

*Smurthwaite & Fowler,* for appellant.

*T. J. Ramsdell,* for appellee.

HOOKER, J.  The plaintiff's action was brought to

recover damages for the alleged negligent killing of three colts, which were run over by the defendant's train. These colts were pastured upon premises of the plaintiff which were not fenced, and they strayed from these premises into the adjoining woods, and found their way, across lands of other proprietors, to the defendant's railway, which was not fenced at the place where the colts approached it. They went upon the track, and were run down and killed. It was the claim of the defendant that it was not required to fence its track at this place, for the reason that it was used as a storing and loading place for ties, logs, and other forest products, which constituted the principal traffic of the road, the country being comparatively new. It is conceded that this was not a stopping place for passenger trains. The testimony of the civil engineer shows that, from the station grounds at Copemish, the track is fenced for about a mile and a half south, and nearly to the point where the colts were killed. From that point there is a stretch of about eight miles, to a place called "Manistee Crossing," or beyond, that there is no fence. At a distance of the length of 54 rails south of the place where the colts were killed, there is a switch for a side track, which runs north 27 rails or more. This switch, and the main track north from the switch towards the place where the colts were killed, and including the place at which they entered upon the right of way, were used as a piling and loading ground for forest products, and skids were constructed there to facilitate such loading. There are other such places, and the engineer testified that the company was in the habit of making them for persons who have timbered lands along the line of road, which the company wishes to reach, and that it would not be feasible to do this if a fence were to be placed along the way at such points. It appears that the land adjoining the road, at the point in question, was owned by the Buckley & Douglas Lumber Company, but that the railroad company bought ties there from one Woolover, and that the State Lumber Company shipped some forest products from that point.

Woolover obtained the ties from the Buckley & Douglas Lumber Company. It does not appear where the State Lumber Company obtained the products shipped by it.

We think that the evidence fairly shows that the skidways and switch were placed there for the mutual convenience of the defendant and the Buckley & Douglas Lumber Company, which owned a large tract of timbered lands at that point, and that they had no other use, except, possibly, when one or more persons may have been permitted to draw products across the Buckley & Douglas lands for shipment from this switch. We find nothing to indicate that the general public had access to this place, though it does not appear that they were forbidden. The learned circuit judge permitted the jury to find that this was a *bona fide* shipping point upon defendant's road, necessary to its convenience and that of the public.

The courts generally hold that statutes requiring railroad companies to fence their railways are not applicable to such portions of the roads as are devoted to the shipment or unloading of freight, or the taking on or discharging of passengers; and this exemption is not limited to regular stations. It includes flag stations, and it extends to yards and switches, and so much of the main track contiguous thereto as is necessary to the safe, expeditious, and convenient handling of cars to be switched or handled at such point. A discussion of this subject, with numerous authorities, will be found in Elliott on Railways, at section 1194. Several cases in our own State recognize the doctrine. Thus, in *Schneekloth* v. *Railway Co.*, 108 Mich. 1, a triangular piece of ground at the intersection of two country highways was exempted from fences and cattle-guards, although there was no building there, nor any agent, and trains stopped there merely when they had passengers or freight to deliver, or when some one displayed a signal erected for the purpose. The traffic at that place was probably much less than in the present case, and it does not even appear that there was a switch. In the case of *McDonald* v. *Railway Co.*, 113 Mich. 484, a spur

track was built at a point remote from a station. This
spur extended two miles, to the plant of a concern engaged
in the manufacture of lime, and a part of this switch was
used for switching passenger trains at times, and was not
fenced. The court held that, although there was no public
station there, the keeping open of this switch was necessary
for het convenience of the public, and there was no obliga-
tion to fence it. See, also, *Rabidon* v. *Railway Co.*, 115
Mich. 390 (39 L. R. A. 405).

The evidence indicates that this railroad runs through a
new and heavily timbered country, in which the principal
industries relate to the removal of the timber. Upon
these the railroad is largely dependent for its business.
We may take judicial notice that landed proprietors will
seek the shortest possible route to the railroad with their
products, and it is probable that it will be mutually bene-
ficial for the railroad company to accept such freight upon
the premises of large operators where this is feasible, as
is done by all roads where manufacturing industries jus-
tify it. We do not find it necessary to say that a railroad
company may safely omit to fence wherever it can find
a little freight to be shipped.

In this case the jury were permitted to find, and we think
that the evidence clearly showed, that this loading place
was one fully justified by the conditions, and the court
might properly have so instructed the jury. He did not,
however, and even left the question of good faith to the
jury, which we think was unnecessary under the proof,
but not injurious to the plaintiff.

Inasmuch as the court might have charged the jury
that this shipping point was not required to be fenced, the
question of contributory negligence is entitled to consider-
ation, in connection with the claim that the train was neg-
ligently managed. The court left this question to the
jury, because, as he told the jury, there was testimony
tending to show that the habit of horses was such that
they would not be likely to attempt to pass from a cleared

117 MICH.—16.

lot into or through the woods. We think the course taken was as favorable to the plaintiff as he had a right to ask. The same may be said of the instructions in relation to the claim that the killing of the colts was wanton.

The judge cautioned the jury against a popular prejudice against railroads. We are not prepared to say that such caution was improper. It was coupled with an injunction to be impartial and to decide justly. We think the matter was within the discretion of the circuit judge, and that there was no just cause to complain of what was said in this connection.

The judgment is affirmed.

The other Justices concurred.