BLEDSOE v. GRAND TRUNK RAILWAY CO.

NEGLIGENCE—INJURY TO TRESPASSER—INFANTS.

* Plaintiff's decedent, a boy 10½ years old, went, uninvited, and contrary to notices posted, into the defendant's railroad yard, where there were 18 tracks, crossed the tracks, went to a slip where the car ferries landed, crawled under a fence, was struck by a lever used in lowering and raising the apron to the slip, and was killed. *Held*, that defendant was guilty of no negligence.

Error to Wayne; Waite, J. Submitted April 5, 1901. Decided April 16, 1901.

Case by Samuel L. Bledsoe, administrator of the estate of Samuel Bledsoe, deceased, against the Grand Trunk Railway Company, for the alleged negligent killing of plaintiff's intestate. From a judgment for defendant on

* Head-note by GRANT, J.

verdict directed by the court, plaintiff brings error. Affirmed.

The railroad yard of the defendant company extends from Brush street on the west to Hastings street on the east, a distance of 1,400 feet, and beyond. On the west end is the depot, with fences and gates, and employés stationed at the gates to prevent the ingress of those having no business with the railroad companies. On the north side are a high brick wall and buildings extending the entire distance from Brush to Hastings street. There is an entrance from Atwater street at Hastings street to these grounds. At this point are admitted teams and persons having business at defendant's elevator, situated nearly opposite Hastings street. The way from Hastings street to the elevator is a private way, owned by and used exclusively for the company and those having business with it. At the entrance from Hastings street a flagman is stationed, with instructions to warn off all those who have no business with the company. Upon the flagman's shanty is a large placard reading as follows:

"NOTICE.

"RAILROAD GROUNDS.
"No THOROUGHFARE.
"No TRESPASSING ALLOWED.
"DANGEROUS."

The flagman was instructed to warn and keep strangers out of the premises. This yard is occupied by 18 tracks, and is the yard not only of the defendant, but of the Detroit, Grand Haven & Milwaukee and the Lake Shore Railway Companies. Switching is constantly going on, and the place is dangerous. A short distance south of the entrance at Hastings street another flagman is stationed, whose duty it is to warn people to keep off the tracks, and to flag trains coming into and going out of the station. At this point is placed another warning, the same as that above given.

The defendant has two slips into which its transfer boats

run, bringing passenger and freight cars across the river. These cars are pulled off the boats, drawn several hundred feet east, and then switched into the depot. There is no provision for passengers to alight from the cars at these slips or to enter them. No one can have any business or right there except the employés of the company. The apron to one of these slips is lowered by a chain wound around a drum, the chain being controlled by a lever about 9 feet in length, and inclosed by a railing about 30 inches high. The bottom of the platform upon which the lever is placed is between 1 foot and 18 inches above the surface of the ground. The inclosure is 20 feet square, surrounded by 4x4 scantling, with an opening on one side about 18 inches wide, through which the man whose duty it is to turn the lever enters. The lever is fastened by a chain when the apron is up. As the boat enters this slip, an employé on board the boat jumps upon the dock, enters the inclosure, releases the chain at the proper moment, and the apron descends. As it descends, the lever moves round. Between the lever and the sides of the inclosure is a space of about 18 inches.

Plaintiff's decedent was a boy 10½ years of age. His mother had sent him with a jug to get some water from a sulphur spring situated on the defendant's grounds near its elevator. She did not know where the spring was. Where the boy entered does not appear, but probably he entered either at Hastings street or at some point east of it. All that the record discloses is that he was seen in the railroad yard, coming from the elevator to this slip. The slip was 400 feet west of the elevator. On the day in question, a transfer boat loaded with passenger cars landed at the slip. The boy, evidently out of curiosity, went from the elevator down to this slip, and stood on or near one of the tracks leading onto the boat. As the boat entered the slip, an employé jumped off, released the lever, and returned to the boat. The signal was then given to the engineer, who commenced to back his engine onto the boat. A person not in the employ of the com-

pany saw the boy and a man named Cox standing either upon or near the tracks, and called out "Look out!" Thereupon the boy, instead of stepping south, where he would have been safe, went to the west, crawled under the fence around the lever, was struck by the lever, and killed. His administrator seeks damages, alleging negligence on the part of the defendant. The court directed a verdict of no cause of action.

*D. Augustus Straker*, for appellant.

*Geer & Williams* (*E. W. Meddaugh*, of counsel), for appellee.

GRANT, J. (*after stating the facts*). The theory of the counsel for the plaintiff upon the argument was that it was the duty of the defendant to surround this platform where the lever was with a fence so high and tight that a boy could not get through, under, or over it. The defendant and the other railroad companies have many employés at work in this yard and around these slips. The purpose of the fence was to serve as a protection to them. For that purpose it was amply sufficient, and no accident had ever occurred before. If it be assumed that the boy was permitted to enter this yard,— of which there is no evidence,—still there is no negligence shown on the part of the defendant. It is not shown that an employé of the defendant saw the boy. It was not to be anticipated that the boy, even though he were frightened by the cry of "Look out!" would run to the west, and crawl under this fence, rather than step back a few steps, where he would have been entirely out of danger. It was incumbent upon the plaintiff to show facts from which a duty to protect this boy, under the circumstances, would arise. He failed to do so.

Aside from this question, it is apparent that the defendant had done all that the law required to keep strangers out of this dangerous place. It is said that men were frequently seen upon the docks, fishing. It does not ap-

pear, however, who these men were, or, if they were
strangers having no right there, that the defendant had
any knowledge of it.   They might have been employés or
longshoremen, who were permitted there to do work in
loading and unloading vessels, and therefore had business
in the yard.   This is not the case of a turntable left un-
protected and unguarded in a position where boys would
naturally resort to it.   The case is within the rule of
*Trudell* v. *Railway Co., ante*, 73 (85 N. W. 250);
*Rabidon* v. *Railway Co.*, 115 Mich. 390 (73 N. W. 386,
39 L. R. A. 405); *Chicago, etc., R. Co.* v. *Smith*, 46
Mich. 504 (9 N. W. 830, 41 Am. Rep. 177); *Hargreaves*
v. *Deacon*, 25 Mich. 1.

Judgment is affirmed.

The other Justices concurred.