## ATCHISON, T. & S. F. RY. Co. v. McCALL.

No. 4084.   Opinion Filed May 11, 1915.

Rehearing Denied July 6, 1915.

(150 Pac. 173.)

1.   **RAILROADS—Killing of Animals—Finding of Fact—Evidence.**
The evidence before and finding of fact by the trial court examined, from which it is found the animal killed gained access to defendant's station grounds at the public highway, admittedly within the station grounds.

2.   **RAILROADS—Duty to Fence—Necessary Station Grounds.**
What is reasonably necessary should be the governing rule, taking into consideration the size of the town, its future prospects, the business transacted, the length of the trains passing over the road, necessary switching, and in particular, under all the facts and circumstances, its actual necessity should be given, no more, and no less.

(Syllabus by Watts, C.)

*Error from County Court, Pottawatomie County;*
*Ross F. Lockridge, Judge.*

Action by T. D. McCall against the Atchison, Topeka & Santa Fe Railway Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*Cottingham & Bledsoe* and *Edward Howell,* for plaintiff in error.

*T. G. Cutlip,* for defendant in error.

Opinion by WATTS, C. This is an action to recover for the value of a jennet, run over and killed by a freight train of the defendant, which was begun before a justice of the peace, and judgment rendered for the plaintiff, and appealed to the county court, where the case was tried to the court without a jury, which resulted in favor of the plaintiff in the sum of $100, from which the railroad com-

pany appeals and alleges error. The court made findings of fact and conclusions of law as follows:

"FINDINGS OF FACT.

"The court finds:

"(1) That a jennet belonging to the plaintiff, T. D. McCall, was, on or about the 6th day of July, 1910, struck and killed by a northbound train of the defendant corporation, the Atchison, Topeka & Santa Fe Railway Company, near the station of Trousdale, in Pottawatomie county, Okla.

"(2) That Trousdale is a regular station stop of the defendant railroad company and is unincorporated and is not platted.

"(3) That the defendant railroad company has three tracks at the said station, consisting of the main track, a house track, and a' passing track; that the switches extend several hundred yards north of the station; that the switch head of the passing track extends about 150 yards south of the station; and that the said railroad company uses the said switches for loading cars and passing trains in the regular conduct of its business.

"(4) That a public road or highway crosses the track of the defendant railroad company between the station and the switch head at the south end of the switch; that the said road is about 50 yards south of the station and about 100 yards north of the furthermost switch; that the railroad company has designated as its yard limits, by a sign post, a point about one-half mile south of the station; that immediately north of the sign post, marking out the yard limit as fixed by the railroad company, is a bridge; that the said railroad company has fenced its right of way up to the bridge on both sides; that, by reason of the bridge, cattle guards are unnecessary at this point; that the right of way is unfenced from the bridge north to the public road and beyond the station; that the said bridge where the track is first fenced is about 350 yards from the station and 200 yards beyond the switch head.

"(5) That the jennet was struck by the train about 300 yards south of the station and between 100 and 150 yards south of the switch head and within the unfenced portion of the right of way designated by the said railroad corporation as its yard limits.

"(6) That the point at which the jennet was struck and killed was not a necessary part of the station grounds of the defendant railroad company; that the right of way of the said defendant should have been fenced between this point and the switch head and closed against stock by a suitable fence and cattle guards; and that the jennet in question was killed at said point by reason of the neglect of the said defendant railroad company to construct and maintain such fence.

"(7) That the jennet was upon the defendant's track without the fault of the plaintiff; that the herd law was in force at that time and place; and that the agents and employees of the defendant company exercised such care in operating the train as was required by them under the circumstances.

"(8) That the only direct testimony by which the value of the jennet could be determined was that she was of the reasonable market value of $100, and the court therefore finds the animal to be of the value of $100."

"CONCLUSIONS OF LAW.

"The court holds:

"That the defendant railroad corporation is liable for the animal killed by reason of the neglect of the said corporation to build and maintain fences and cattle guards nearer the end of the switch than the point at which the jennet was struck by the train."

It seems to us we are confronted with two propositions: Where did the animal gain access to the company's station grounds? Was the place of the killing a necessary part of the station grounds?

1. We have carefully read the evidence and the finding of fact and think there is no doubt but that the animal went on the property of defendant at the public road about 150 feet south of the depot, and within the admittedly station grounds. The findings of the court do not leave this question in doubt.

2. The second proposition is more difficult, especially as the court has found the point of killing was an unnecessary part of the station grounds. Upon this finding of fact we are at a loss to know how the trial court arrived at such a conclusion. Three witnesses, Moseley, Garner, and Beckerman, testified for defendant that the space from the bridge north to the south switch head was necessary switching ground. The two latter had worked on trains hauling 75 cars over the road, and experience taught them it was dangerous to the lives of trainmen engaged in their line of duty to cross and recross cattle guards, which would be necessary in the event they had wing fences and cattle guards at ends of switch heads. The plaintiff did not attempt to controvert this evidence. It seems to us the findings of the court as to the yard limits is squarely in the face of the evidence, and to say that the railroad company's yard limits, under the facts in this case, ended with the switches, seems to us without reason. It is in evidence that trains over this road hauled as many as 75 cars, and a great deal of switching is done at Trousdale, and one of the side tracks is used as a passing track. As an illustration, suppose a citizen of Trousdale, or surrounding community, had bought ten cars of cattle in the state of Texas, which were being delivered at the stock yards at Trousdale by one of defendant's lengthy trains. It must stop somewhere, until the switch can be turned so that the train can pass onto the side track for unloading.

This same necessity must occur in switching for passing trains, whether freight or passenger. Therefore, not only private, but public, interests demand a greater yard limit, under the facts in this case, from where the switches terminate. The railroad company, of course, cannot set an arbitrary limit, but should be governed by the rules of reason. We think its previous designation should have some weight; at any rate, what is reasonably necessary should be the governing rule, taking into consideration the size of the town, its future prospects, the business transacted, the length of the trains passing over the road, necessary switching, and in particular, under all the facts and circumstances, its actual necessity should be given, no more and no less.

The Revised Laws of 1910 provide:

"1435. Railroads to Fence Their Roads.—It shall be the duty of every person or corporation owning or operating any railroad in the state of Oklahoma to fence its road, except at public highways and station grounds, with a good and lawful fence."

"1438. Failure to Fence—Penalty.—Whenever any railroad corporation or the lessee, person, company, or corporation operating any railroad, shall neglect to build and maintain such lawful fence, such railroad corporation, lessee, person, company or corporation operating the same, shall be liable for all animals killed by reason of the failure to construct such fence."

It will be seen by section 1435, *supra*, that the defendant is exempt from fencing at public highways and station grounds. The question then follows: Was the place where the animal was killed, "between 100 and 150 yards south of the switch head and within the unfenced portion of the right of way designated by the * * * railroad * * * as its yard limits" (court's fifth find-

ing of fact), station grounds, within the meaning of the statute? We think the words "station grounds," "switch limits," "depot grounds," and such like have the same general meaning (*Southern Kan. R. Co. v. Cooper*, 32 Tex. Civ. App. 592, 75 S. W. 328), and unless by specific statute or strict rule of construction are used meaning the same thing. It has been said:

"* * * It is well settled that a railroad company is not required to fence its road where such fence interferes with its own rights in operating its road or transacting its business, nor where the rights of the public in traveling or doing business with the company are interfered with; so a company need not fence between the end of a switch extending beyond the station house and a bridge crossing a highway, when the necessary cattle guards would, on account of the peculiar circumstances involved, endanger the lives of employees. *Evansville & T. H. R. Co. v. Willis,* 93 Ind. 507.

"So, station grounds cannot be limited to the territory within the switches. At least as much of the track and grounds outside of the switches as is required and is in actual use for reaching the said tracks is a part of the station grounds to which the statutory requirement to fence does not apply. *Grondin v. Duluth, S. S. & A. Railroad Co.,* 100 Mich. 598, 59 N. W. 229.

"When a cattle guard could not be placed any nearer the head of a switch without endangering the lives of employees, the company is not liable, as the switching is necessary to the transactions of the station or business with the public. *Pearson v. Chicago, B. & K. C. R. Co.,* 33 Mo. App. 543.

"There is no duty on the part of the railroad company to fence between a cattle guard and the end of a switch connected with a station, when by so doing the transaction of business would be hindered and the lives of employees endangered. *Jennings v. St. Joseph & St. L. R. Co.,* 37 Mo. App. 651.

... "A railroad company is exempt from fencing between a cattle guard and the apex of a switch connected with a station, when its business would be thereby materially interfered with and the safety of employees endangered. *Grant v. Atchison, T. & S. F. R. Co.*, 56 Mo. App. 65.

"So, a railroad company is exempt from fencing at a point 95 feet distant from the apex of a switch, when the evidence tends to show that the switch limits are reasonable and cannot be contracted without materially interfering with handling of trains at this station. *Webster v. Atchison, T. & S. F. R. Co.*, 57 Mo. App. 451.

"A railroad company is not required to maintain cattle guards so near to the approach of its switches connected with the station as to interfere with the business of handling its trains. *Hurd v. Chappell*, 91 Mo. App. 317.

"*Prima facie*, depot grounds include all that part of the right of way which is left unfenced between the switches and cattle guards on either side of the platform, including the switches and side tracks. In some instances they may even be deemed to extend beyond the siwtch to that point to which an ordinary freight train must run in order to switch and run back upon its side track. *Mills & L. C. Lumber Co. v. Chicago, St. P. M. & O. R. Co.*, 94 Wis. 336, 68 N. W. 996."

See, also, *Rabidon v. Chicago & W. M. R. Co.*, 115 Mich. 390, 73 N. W. 386, 39 L. R. A. 405; *Cincinnati, R. & Ft. W. R. Co. v. Wood*, 82 Ind. 593.

In *Wilmot v. Oregon R. Co.*, 48 Or. 494, 81 Pac. 528, 7 L. R. A. (N. S.) 202, 120 Am. St. Rep. 840, 11 Ann. Cas. 18, it is said:

"And where grounds have been appropriated, surveyed, and set apart by the railway company for station or depot purposes, it affords very strong, if not conclusive, evidence that their boundaries and extent are such as and no more than are necessary and proper, and their limits

should not be curtailed or extended by the court or jury, unless in a very clear case.   3 Elliott, Railroads, par. 1194; *Chicago & G. T. R. Co. v. Campbell,* 47 Mich. 265, 11 N. W. 152; *McGrath v. Detroit, M. & M. R. Co.,* 57 Mich. 555, 24 N. W. 854; *Rabidon v. Chicago & W. M. R. Co.,* 115 Mich. 390, 39 L. R. A. 405, 73 N. W. 386."

In *St. Louis & S. F. R. Co. v. Brown,* 32 Okla. 486, 122 Pac. 136, Sharp, C., now a member of the Supreme Court, approvingly quotes *Mills & L. C. Lumber Co. v. Chicago, St. P. M. & O. R. Co., supra.*   Our attention has been called to *St. L. & S. F. R. Co. v. Smith,* 41 Okla. 163, 137 Pac. 714, but we think our views are in harmony with this case.

We think the *onus* of showing the necessity of the designated or claimed station ground was upon the defendant, and the jury or court trying the case is the judge thereof, but when proven, and there is no evidence reasonably tending to controvert the same, it is the duty of the court, if to it, to find for the defendant, or, if to a jury, to so instruct.   We conclude the animal gained access to defendant's station grounds at the public highway about 50 yards south of the station, and, while so on its station grounds, was run over and killed by defendant's train, and, as no other alleged negligence was pleaded, claimed, or proven, the failure to fence the station grounds, or to construct cattle guards at the public crossing or highway, passing over the station grounds as herein found, was not negligence on the part of the defendant.

We therefore think the trial court, under the facts in the case at bar, committed error in not rendering judgment for the defendant.

We therefore recommend that the case be reversed and remanded.

By the Court:   It is so ordered.