KNOP, RESPONDENT, v. CHICAGO, MILWAUKEE & ST.
PAUL RY. CO., APPELLANT.

(No. 4,082.)

(Submitted January 16, 1920.   Decided February 16, 1920.)

[187 Pac. 1020.]

*Railroads—Fencing—Side-tracks and Spurs—Killing Livestock
—Presumption of Negligence—Statutes.*

Railroads—Fencing—Side-tracks and Spurs—Liability for Injuring Live-
stock.
   1. *Held,* under section 4308, Revised Codes, that a railroad company
   is not required to fence its tracks at spurs or sidings, and is liable for
   injuries to livestock at such places only where its actual negligence
   is established.

Same—Livestock—Injury or Killing—Prima Facie Case of Negligence.
   2. Proof of the injury or killing of livestock on the unfenced portion
   of a railroad track near a siding or spur establishes a *prima facie* case
   of negligence on the part of the company, notwithstanding the provi-
   sions of section 4308 as above construed.

Same—Presumption of Negligence—Conflict in Evidence—Jury Question.
   3. Positive testimony by defendant's employees that the train which
   killed plaintiff's livestock near an unfenced siding was properly equipped
   with safety devices and that all reasonable care was exercised to pre-
   vent the accident merely created a conflict in the evidence determinable
   by the jury, and did not overcome the presumption of negligence
   raised by the fact of the killing.

   [On power of legislature to make killing of stock *prima facie* evi-
   dence of negligence, see note in 32 L. R. A. (n. s.) 227.]

*Appeal from District Court, Powell County; Geo. B. Winston,
Judge.*

ACTION by Louis G. Knop against the Chicago, Milwaukee
& St. Paul Railway Company.   From a judgment for plaintiff,
and from an order denying motion for new trial, defendant
appeals.   Reversed and remanded.

*Mr. L. W. Jordan,* for Appellant, submitted a brief; *Mr. I. R.
Blaisdell,* of Counsel, argued the cause orally.

The contention of the plaintiff in the trial of this case was,
that the place where the plaintiff's horses were killed should
have been fenced by the defendant, and that since it was not
fenced, *prima facie* the defendant was negligent and is liable

for the value of the horses.  The contention of the defendant was, that the place where the horses were killed was at a siding on defendant's railroad, and that, under section 4308 of the Revised Codes, it was not required to fence, and the only question at issue was whether or not the defendant was negligent in the operation of its train.

The evidence introduced by both the plaintiff and the defendant was, that the horses were killed at a point inside of the siding near Garrison station.  Some of the witnesses called it a passing track; some called it a siding.  In railroad nomenclature, it means a passing track, the side-tracks where trains can pass each other.  It is defined in the case of *City of Philadelphia* v. *River Front R. R. Co.*, 133 Pa. St. 134, 19 Atl. 356, 357, as follows: "The words 'sidings, switches, and turnouts,' in relation to railroads, are, of course, of modern growth, and not only in popular use but in the dictionaries are treated as to some extent interchangeable.  Thus, the only definition that Webster gives of siding is the turnout of a railroad (noted as English) and turnout is defined as a short side-track of a railroad which may be occupied by one train while another is passing on a main track; a siding."  "A blind siding is a side-track where there is no telegraph station."  (*Galveston H. & S. A. Ry. Co.* v. *Brown* (Tex. Civ.), 59 S. W. 930, 932.)  The term "switch" is defined as follows: "A switch is but a mechanical contrivance or movable opening to pass cars from one track to another."  (8 Words & Phrases, 6842, and cases cited.)  Hence from these definitions it will be seen that the siding or passing track at Garrison comes within the meaning of a siding as designated in section 4308, which section excepts from the general fencing law, spurs, sidings, Y's, crossings and turntables, at which points the company is still liable for damages in case of injury caused by the negligence of the company in the operation of its trains.  In other words, actionable negligence.  The burden rested upon plaintiff to show that the injury occurred at a point where the defendant is required to fence its track.  (*Kyser* v. *K. C., St.*

57 Mont.—19

*J. & C. B. Ry. Co.,* 56 Iowa, 207, 9 N. W. 133; *Comstock* v. *Des Moines Valley Ry. Co.,* 32 Iowa, 376.)

In an action against a railroad to recover the value of stock killed by its train, the uncontradictory and unimpeachable testimony of such employees of the defendant company, as are presumed to know the facts, that there was no negligence overcomes the presumption of negligence that the law raises from the fact of the killing. (*Georgia Southern & F. Ry. Co.* v. *Sanders,* 111 Ga. 128, 36 S. E. 458; *Western & A. Ry. Co.* v. *Robinson,* 114 Ga. 159, 39 S. E. 950; *Central of Georgia Ry. Co.* v. *Dich,* 121 Ga. 65, 48 S. E. 683.)

*Mr. S. P. Wilson,* for Respondent, submitted a brief; *Mr. E. J. Cummins,* of Counsel, argued the cause orally.

Defendant introduced proof pretending to show careful management of the train, but did not pretend to offer any excuses for the want of the fence, except that the point was within siding limits, and the sufficiency of that excuse is hereinafter discussed. Not only our statute but the decisions generally fix the rule to be that where there is no fence or an insufficient fence at the place of injury the animal is presumed to have entered the right of way at that point. (*Eaton* v. *Oregon R. & N. Co.,* 19 Or. 371, 24 Pac. 413; *Terre Haute etc I. R. Co.* v. *Penn,* 90 Ind. 284; *Louisville etc. Ry. Co.* v. *Kious,* 82 Ind. 357; *Indianapolis etc. R. Co.* v. *Lindley,* 75 Ind. 426; *Cox* v. *Atchison etc. R. Co.,* 128 Mo. 362, 31 S. W. 3; *Central R. etc. Co.* v. *Lee,* 96 Ala. 444, 11 South. 424; *Daily* v. *Chicago etc. R. Co.,* 121 Iowa, 254, 96 N. W. 778; *McCoy* v. *California Pac. R. Co.,* 40 Cal. 532, 6 Am. Rep. 623.)

Fencing statutes, as a rule, have been made general in their application and generally have made no exceptions for depot grounds, sidings, *etc.* The courts, however, have interpreted this exception into the statutes. (*Baker* v. *Southern California Ry. Co.,* 114 Cal. 501, 46 Pac. 604, 605, construing section 408, Cal. Civ. Code; 2 Kerr's Civ. Code, p. 480.) It was no doubt in view of this construction of the numerous statutes in the various

states requiring railroad companies to fence their right of way that caused the clause, "Provided that nothing herein shall * * * prevent any person * * * from recovering damages * * * for negligent killing * * * of domestic animals at spurs, Y's, crossings and turntables," to be added to our statute. This provision of the statute is neither expressly, nor by implication, an exception of the duty of the railroad company to fence. The statute simply recognizes an exception arising from a source outside the statute. To learn what the exception is, we must go to the source from which it arises, to-wit, the various court decisions which give rise to the exception. Our own court, under the statute general in its wording, has recognized the above exception. (*Beaudin* v. *Oregon Short Line R. R. Co.,* 31 Mont. 238, 78 Pac. 303.)

It will be seen from the authorities below that the duty to fence applies to all places, except where the greater duty of "public interest," either in giving the public access to the railroad or the care and safety of the lives of the employees, and others, arises. (11 R. C. L., sec. 33; *Pennsylvania Co.* v. *Mitchell,* 124 Ind. 473, 24 N. E. 1065; *Rabidon* v. *Chicago etc. R. Co.,* 115 Mich. 390, 39 L. R. A. 405, 73 N. W. 386; *Pennsylvania Co.* v. *Mitchell, supra; Greeley* v. *St. Paul etc. R. Co.,* 33 Minn. 136, 53 Am. Rep. 16, 22 N. W. 179; *Kobe* v. *Northern Pac. R. Co.,* 36 Minn. 518, 32 N. W. 783; *Mundhenk* v. *Central Iowa R. Co.,* 57 Iowa, 718, 11 N. W. 656; Elliott on Railroads, sec. 1193.)

Where there is any reasonable controversy over the facts in determining whether or not the place in question should be fenced, the same is a matter for the jury to determine under proper instructions. (*Rosenberg* v. *Chicago B. & Q. R. Co.,* 77 Neb. 663, 11 Ann. Cas. 22, note, 110 N. W. 641; *Toledo etc. R. Co.* v. *Franklin,* 159 Ill. 99, 42 N. E. 319; *Snell* v. *Minneapolis etc R. Co.,* 87 Minn. 253, 91 N. W. 1108; *Dinwoodie* v. *Chicago etc. R. Co.,* 70 Wis. 160, 35 N. W. 296; *Grosse* v. *Chicago etc. R. Co.,* 91 Wis. 482, 65 N. W. 185; *McDonough* v. *Milwaukee*

*etc. R. Co.,* 73 Wis. 223, 40 N. W. 806; Elliott on Railroads, sec. 1202.)

MR. JUSTICE HURLY delivered the opinion of the court.

Two of plaintiff's horses were killed upon the track of defendant railway company near Garrison by one of its engines.

Plaintiff brought action and recovered judgment, from which, and an order denying a motion for a new trial, defendant appealed. .

It appears that the main line of defendant's railway runs in a generally westerly or northwesterly direction from Garrison. Paralleling the same, commencing at a point near the depot, is a passing or side track, joining the main line at a point some distance west. The accident occurred about 200 to 300 feet east of the switch connecting the two tracks at the west end of the passing track. To the north of defendant's track, at a distance testified by witnesses as between 200 and 300 yards at the point where the accident occurred, is the main line of the Northern Pacific Railway. The two lines later converge, and enter a tunnel used by both railway companies; the tunnel being approximately one mile from the depot of defendant at Garrison. On the south of defendant's track the defendant maintains a fence, and the Northern Pacific Railway Company likewise maintains a fence upon the north side of its track. Each fence extends to a point at or near the tunnel. There is no fence between the two tracks.

Plaintiff's land adjoins the track of the Northern Pacific Railway Company on the north side of its fence; the fence being used by plaintiff as a part of his pasture. There was a gate therein leading to the tracks, but plaintiff testified that the gate was not constructed for his benefit nor used by him. The horses were kept in the pasture referred to and went therefrom, presumably through this gate, though there is no direct testimony as to how they escaped from the pasture.

The engineer testified that he did not discover the horses in time to stop his train before coming in contact, though his en-

gine was properly equipped with safety appliances, and that he did all that was possible without endangering the safety of passengers to bring the train to a stop, to avoid injuring the animals.

The plaintiff predicates his right to recover upon the failure of the defendant to maintain a proper fence upon the north side of its track between its station at Garrison and the tunnel, also alleging negligence in the operation of the train which killed the [1] animals. Defendant's answer is in effect a general denial. The contention of the company was that, the stock being killed at a siding, under the law it was not obliged to fence at such point.

An examination of our statutes dealing with the subject of animals injured by reason of the failure to fence discloses that various laws upon the subject have been enacted by different legislatures.

The history of section 950, Civil Code of 1895, is discussed by Mr. Commissioner Clayberg in *Beaudin* v. *Oregon Short Line R. R. Co.*, 31 Mont. 238, 78 Pac. 303. That section was later amended by Chapter 29, Laws of 1905, page 60, thereof, which in turn was amended by an Act of the legislature approved March 1, 1907, embodied in our present statute as section 4308, Revised Codes of 1907, which reads as follows: "Railroad corporations must make and maintain a good and legal fence on both sides of their track and property, and maintain, at all crossings, cattle-guards over which cattle or other domestic animals cannot pass. In case they do not make and maintain such fence and guards, if their engines or cars shall kill or maim any cattle or other domestic animals upon their line of road, they must pay to the owner of such cattle or other domestic animals, in all cases, a fair market price for same, unless it occurred through the neglect or fault of the owner of the animal so killed or maimed: Provided, that nothing herein shall be construed so as to prevent any person, or persons, from recovering damages from any railroad corporation for its negligent killing or injury to any cattle, or other domestic animals, at spurs, sidings, Y's, crossings and turntables."

The only difference between the present statute and Chapter 29, Laws of 1905, is the addition to the latter Act of the clause commencing with the words *"provided"* therein.

Section 950, Civil Code of 1895, restricted the liability of the railways for injuries based upon a mere failure to fence to accidents occurring upon the railway along or through the realty of the owners of the cattle injured, and contained other provisions not embraced in the present statute, but which are not germane to the questions involved in this case. In all of these sections, however, is found the general provision: "Railroad corporations must maintain a good and sufficient fence on either or both sides of their track and property." In none of them is contained a provision in express words relieving the railway company from the obligation of fencing all portions of their rights of way, including depot grounds, sidings, spurs, *etc.*

Provisions of similar statutes, however, have been frequently construed, and the rule is stated in Elliott on Railroads, sections 1193 and 1194 (citing cases), in accord with the weight of authority and which we regard as founded upon sound reasoning, as follows: "Although a statute imposing the duty to fence may not in express terms except highways, the court, from the necessities of the case, will give the statute such a construction as to exempt the company from the duty to fence at a public crossing.

"Railroad companies are not required to fence their tracks at their depots and about their station grounds. Where passengers and freight are received and discharged the public convenience requires that there should be unobstructed access to the buildings and tracks, and therefore fences are not required.

"The exemption applies to passenger stations, freight depots, and the space used for the convenience of the company in switching its cars and making up trains and supplying its engines with fuel and water. The exemption of switch grounds is founded on the danger to employees which would necessarily result were the tracks fenced. The safety of the employees at points where they almost continuously pass up and down the track in the per-

formance of their duties is far more important than would be the safety afforded to animals and property from the erection of fences at such tracks.'' (See, also, *Baker* v. *Southern California Ry. Co.,* 114 Cal. 501, 46 Pac. 604, 605; *Prickett* v. *Atchison, T. & S. F. R. Co.,* 33 Kan. 748, 7 Pac. 611; *Atchison, T. & S. F. R. Co.* v. *Shaft,* 33 Kan 521, 6 Pac. 908; *Wilmot* v. *Oregon Ry. Co.,* 48 Or. 494, 120 Am. St. Rep. 840, 11 Ann. Cas. 18, 7 L. R. A. (n. s.) 202, 87 Pac. 528; 11 R. C. L., sec. 33 (Fences).)

In fact, this court, in the case of *Beaudin* v. *Oregon Short Line R. Co., supra,* while not so stating explicitly, recognized the rule as above set forth, in basing its decision therein upon similar authorities there cited.

Respondent insists that, as to whether a certain point on the railway is or is not one which by reason of its location the railroad is required to fence, the rule is as stated in Elliott on Railroads, sections 1194 and 1202 (citing cases):

''It is held that the question as to whether the place at which an animal is killed or injured is reasonably necessary for depot purposes may be for the jury, but where only one conclusion can be drawn it is a question for the court.

''While it is purely a question of law whether or not a railway company shall fence at its depot grounds or at points where the erection of a fence would interfere with the company in transacting its business, it is usually a question of fact whether a certain point constitutes part of the depot grounds or whether the erection of a fence at any particular place would interfere with the company's employees in the performance of their duties. Thus it has been held for the jury to determine whether a company is excused from putting in cattle-guards at a particular point, on the ground that their erection would interfere with the employees of the company in the performance of their duties.''

Such views would be of great weight had either of the statutes in force preceding the enactment of section 4308 remained a part of the statute law of this state. However, as indicated, the legislature, in enacting what is now section 4308, added to the then existing law the following clause: ''Provided, that nothing herein

shall * * * prevent any person * * * from recovering damages * * * for its negligent killing * * * domestic animals at spurs, sidings, Y's, crossings and turntables'' —thereby saying to the railway companies that in the event of their failure to fence their tracks they would be liable for all injuries resulting to stock by reason of such failure, without a showing of negligence, and that as to the designated places the companies would be held liable for injuries to stock only where its actual negligence was established. As, in the cases where the injuries are the result of a failure to fence, other negligence need not be proven, while in the latter case a stock owner must prove negligence, it is reasonable to assume that the legislature, recognizing the interest of the public in having free access to station grounds for the transaction of business with the companies, and the danger resulting to employees operating trains from the construction of necessary cattle-guards across the tracks connecting fences contiguous to sidings, spurs, *etc.,* in effect said that no fence should be required at such places.

Appellant contends that in the latter event the provisions of
**[2, 3]**    section 4309 that the killing or injury shall be *prima facie* evidence of negligence on the part of the company do not apply; also that where, as in this case, the railway employees testify positively that the train was properly equipped with safety devices, and that all reasonable care was used to prevent injury, even in cases where that section is applicable, the *prima facie* case has been rebutted. In neither of these views do we concur. Section 4309 makes no exception in favor of railway companies as to accidents occurring at the places enumerated in section 4308. The owner suing for damages resulting from injuries to his stock at those points is as much entitled to establish his *prima facie* case under the provisions of the latter section as in any other instance. The other contention has been set at rest by decisions of this court that such testimony on the part of the company merely creates a conflict in the testimony, to be determined by the jury. (Rev. Codes, sec. 8028, subd. 2; *Johnson* v. *Chicago, M. & St. P. Ry. Co.,* 52 Mont. 73, 155 Pac. 971; *Free-*

*man* v. *Chicago, M. & St. P. Ry. Co.*, 52 Mont. 1, 154 Pac. 912; *Emerson* v. *Butte Elec. Ry. Co.*, 46 Mont. 454, 129 Pac. 319; *State* v. *Nielsen, ante,* p. 137, 187 Pac. 639.)

The court submitted to the jury the question whether the de-fendant was guilty of negligence in the failure to maintain a fence, and also submitted an instruction in effect leaving to their determination whether or not the erection of a fence would inter-fere with the convenience of the public or the safety of em-ployees of the railway company, in either of which events the jury were told the company was not required to fence the siding.

In our view the sole question to be submitted to the jury, upon the record, aside from that of damages, was as to whether or not the accident was occasioned by the negligent operation of de-fendant's train.

It follows that the motion for a new trial should have been granted. The judgment and order appealed from are reversed and the cause remanded for a new trial.

*Reversed and remanded.*

Mr. Chief Justice Brantly and Associate Justices Hollo-way, Matthews and Cooper concur.