BOWERS, Respondent, *v.* CHICAGO, MILWAUKEE & ST. PAUL RY. CO., Appellant.

(No. 4,485.)

(Submitted September 24, 1921. Decided October 26, 1921.)

[201 Pac. 825.]

*Railroads—Highways—Fences—Station   Grounds—Injury   to Livestock.*

Railroads—Highway Crossings—Cattle-guards—Wing Fences.
 1.   Section 4308, Revised Codes, making it incumbent upon railroads to maintain good and legal fences on both sides of their track and property, impliedly excepts highway crossings, at which, however, they must install cattle-guards made effective by wing fences on both sides of the highway.

Same—Station Grounds—Fences not Required.
 2.   Railroad tracks at depot and station grounds where passengers and freight are received and discharged, where employees are required to pass continuously back and forth, and where public convenience requires free and unobstructed access, are impliedly excepted from the requirement of fencing made by section 4308, Revised Codes.

Same—Fences at Station Grounds—Presumptions.
 3.   Where a railroad company chooses to fence its station grounds, though not required to do so, no presumption may be indulged against it because of the location and character of the fences if they meet all legal requirements as to their sufficiency.

Same—Injury to Livestock at Fenced Station Grounds—Absence of Negligence—Nonliability.
 4.   In the absence of willfulness or negligence in handling their trains, railroad companies are not liable for injuring or killing livestock which stray into their depot or station grounds; hence where it was conceded by plaintiff that defendant company's locomotive engineer was not negligent in the handling of the train which killed a horse for which damages were sought, plaintiff was not entitled to recover.

Same—Fences at Station Grounds Forming Trap—Evidence—Insufficiency.
 5.   Where there was a space on either side of the track, which had been fenced by defendant company though not required to do so, affording ample space for plaintiff's horse to keep out of the way of defendant's train, the contention that the fences created a trap from which the animal could not escape, *held* untenable in the absence of evidence showing that the fences constituted a trap or cul-de-sac.

*Appeal from District Court, Musselshell County; George P. Jones, Judge.*

2.   Depot or station grounds as within purview of statute requiring railroad to fence tracks, see notes in 11 **Ann. Cas.** 20; Ann. Cas. 1912D, 628; 7 **L. R. A.** (n. s.) 203.

[61 Mont. 200.]

ACTION by J. W. Bowers against the Chicago, Milwaukee
& St. Paul Railway Company, a corporation. Judgment for
plaintiff and defendant appeals. Reversed.

*Mr. Thomas J. Mathews,* for Appellant, submitted a brief;
*Mr. A. N. Whitlock,* of Counsel, argued the cause orally.

In suits for damages on account of injury to animals on
railroad tracks, the place where the animal came upon the
track is nearly always a controlling element in determining
the liability of the company. (3 Elliott on Railroads, p. 453.)

The general rule is that if the animal came upon the track
at a place where the company was exempt from fencing, there
can be no liability unless the injury was willfully or negli-
gently inflicted. (*Jeffersonville etc. R. Co.* v. *Huber,* 42 Ind.
173; *Peoria etc. R. Co.* v. *Barton,* 80 Ill. 72; *Wier* v. *St. Louis
etc. R. Co.,* 48 Mo. 558; *Bremmer* v. *Greenbay etc. R. Co.,* 61
Wis. 114, 20 N. W. 687; *Schneir* v. *Chicago etc. R. Co.,* 40
Iowa, 337; *Asher* v. *St. Louis etc. R. Co.,* 79 Mo. 432.) In this
case the testimony shows that the mare came on to the depot
grounds where the section-house is located, and where no
fence was required. The condition of the fence at the actual
place of entry is the test for determining the company's lia-
bility. (3 Elliott on Railroads, p. 453, and cases cited under
note 209.)

Section 4308 of the Revised Codes provides with reference
to the building of fences and cattle-guards; but it could not
have been the intention of the legislature to require railroad
companies to fence on both sides of their depot grounds in
cities and villages through which the road passes; and ordi-
narily the railroad companies are not so required. Railroad
companies are not required to fence their tracks at their de-
pots and about their station grounds. Where passengers
and freight are received and discharged, public convenience
requires that there should be unobstructed access to the
buildings and tracks, and, therefore, fences are not required.

(3 Elliott on Railroads, p. 438; *Scheekloth* v. *Chicago etc. R. Co.,* 108 Mich. 1, 65 N. W. 663; *Bechdolt* v. *Grand Rapids etc. R. Co.,* 113 Ind. 343, 15 N. E. 686; *Galena etc. R. Co.* v. *Griffin,* 31 Ill. 303; *Atchison etc. R. Co.* v. *Shaft,* 33 Kan. 521, 6 Pac. 908; *Kobe* v. *Northern Pac. R. Co.,* 36 Minn. 518, 32 N. W. 783; *Acord* v. *St. Louis etc. R. Co.,* 113 Mo. App. 84, 87 S. W. 537; *Flagg* v. *Chicago etc. R. Co.,* 96 Mich. 30, 21 L. R. A. 835, 55 N. W. 444.)

The company not being required to maintain fences at its station grounds, it follows that it will not be liable for stock injured by reason of the absence of such fences, unless the company was guilty of negligence in handling the train which causes the injury. (3 Elliott on Railroads, p. 438.)

*Mr. J. P. Healy,* for Respondent, submitted a brief and argued the cause orally. .

Section 4308 of the Revised Codes of Montana provides that appellant is required to "make and maintain a good and legal fence on both sides of their track and property, and maintain at all crossings cattle-guards, over which cattle or other domestic animals cannot pass"; and "In case they do not make and maintain such fence and guards, if their engines or cars shall kill or maim any cattle or other domestic animals upon their line of road, they must pay to the owner of such cattle or other domestic animals, in all cases, a fair market price for the same, unless it occurred through the neglect or fault of the animal so killed or maimed. * * * "

In this case there were no cattle-guards at all, and the fence on the north side extended from the eastward down to within three feet of the stockyards, and on the south side, from the eastward down past the station-house, except for a gap of little over one hundred feet located a few feet east of the said station-house, thus creating a closed lane, trap, or "cul-de-sac," open only at the west end, near the station-house, and closed at the east end by the long expanse of track,

fenced on both sides, "into which animals are liable to wander and become injured." (33 Cyc. 1200, note 17; *Ft. Wayne etc. Ry. Co.* v. *Herbold,* 99 Ind. 91; *Louisville etc. Ry. Co.* v. *Porter,* 97 Ind. 267; *Indianapolis etc. Ry. Co.* v. *Bonnell,* 42 Ind. 539.) In *Carrollton Short Line Ry. Co.* v. *Lipsey,* 150 Ala. 570, 43 South. 836, the court said: "The cattle-guard must be so constructed as not to be a trap or snare to stock. It should be so constructed that the stock could easily see the danger of attempting to cross it, so that under ordinary circumstances an animal would not undertake to cross it." Also: "A railway company will be liable for the injury to stock occasioned by its maintaining a barbed wire fence on or along its right of way, if it is so negligently constructed as to be a source of danger to the stock." (33 Cyc. 1163; *Winkler* v. *Carolina etc. Ry. Co.,* 126 N. C. 370, 78 Am. St. Rep. 663, 35 S. E. 621.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

A mare belonging to plaintiff, which had strayed into the station grounds of defendant at Bascom, Montana, was run down by a freight train and fatally injured, so that it was necessary to kill her. Plaintiff commenced this action to recover damages for the loss he thus sustained. After issues had been made up, the parties submitted the cause for judgment upon an agreed statement of facts. The court concluded that the defendant was liable and rendered judgment for the plaintiff for $200, the amount which it was agreed the mare was worth, with interest at 8 per cent per annum from the date of the commencement of the action. Defendant has appealed.

To make clear a statement of the facts so far as they are material to present the question submitted for decision, we reproduce a plat of defendant's station grounds and a portion of the town site of the village of Bascom, which we find

incorporated in the record. For convenience we shall note
the directions as north, south, east, and west.

The station buildings are designated as the depot and sec-
tion-house on the south side of the tracks, and the stockyards
on the north side. The station grounds to the east of these
buildings are inclosed on the north and south by wire fences,
indicated by the notched lines parallel to the tracks at a dis-
tance of 100 feet on either side of the main track. This is
the track nearest the depot building. These fences are re-
ferred to in the statement as legal fences, that is, such as
comply with the statute imposing upon railway companies the
duty to fence their tracks and property.

As indicated on the plat, the station grounds are fenced
toward the west from point I, on First Avenue in the
town site, and from the stockyards on the north. The only
means of access into the station grounds are a narrow passway
through the fence on the north at the stockyards at A, not
protected by a gate, and the gap in the fence on the south
side at First Avenue, indicated by the letters G I. So far
as the statement discloses anything on the subject, the portion
of the town site appearing on the plat is unoccupied. The
area to the east of this and beyond the fence south of the
tracks is an inclosed pasture belonging to the plaintiff, the
west boundary line being the fence G H, extended south.
On August 22, 1915, the day before the accident, the mare in
question was in the pasture. During the following night she,

[61 Mont. 200.]
with other animals, strayed out of the pasture and into the station grounds by way of First Avenue through the gap at First Avenue, and east along the tracks to a point near the switch at C. Several trains of the defendant do not stop at Bascom, among these being the west-bound freight No. 63. About 3 o'clock in the morning of August 23, train No. 63, consisting of forty-five cars and a caboose, driven by defendant's engineer, Harper, was approaching the station from the east at a speed of twenty miles per hour. The grade at this point is from two to three per cent downward toward the west. When the engine was about twelve car-lengths east of the point marked (1), the engineer discovered two horses on the track. He immediately applied the emergency brakes, sounded the engine whistle, opened its cylinder cocks, allowing the steam to escape, in order to frighten the horses from the track, and did everything in his power to stop his train. These horses moved off the track to the south, but were immediately followed by five others, stringing along one after the other across the track, among them the mare in question. She was the last one of the string, and was struck by the engine.

Counsel for defendant contends that the admitted facts are insufficient to show that the defendant is liable for plaintiff's loss. His argument is that in such cases the point at which an animal strays upon a railway track is a controlling element in determining the liability of the company for injury to it; that, though the statute makes a general requirement that railway companies shall fence their tracks and property, an exception must necessarily be made of depot and station grounds, including a way of access to them; and that since it is conceded that the engineer did everything in his power to prevent his train from running the mare down, and was not negligent in handling it, the defendant is not liable because the mare had strayed into the station grounds, which the company was not required to fence, and was there without defendant's fault.

Counsel for plaintiff, conceding that the engineer was not negligent in handling his train, and that defendant is not liable on that ground, contends that the location of the fences from First Avenue east from the narrow gap at that point constituted that part of the station grounds a cul-de-sac, or trap, rendering it impossible for animals straying into it to escape from trains approaching from either direction, and hence that the defendant is liable for this reason. In other words, it was incumbent upon it either to have maintained wing fences and a cattle-guard immediately east of the gap at First Avenue to prevent animals from straying toward the east, or, in the alternative, to have omitted to maintain any fences in this direction at all.

Section 4308, Revised Codes, declares: "Railroad corporations must make and maintain a good and legal fence on both sides of their track and property, and maintain, at all crossings, cattle-guards over which cattle or other domestic animals cannot pass. In case they do not make and maintain such fence and guards, if their engines or cars shall kill or maim any cattle or other domestic animals upon their line of road, they must pay to the owner of such cattle or other domestic animals, in all cases, a fair market price for the same, unless it occurred through the neglect or fault of the owner of the animal so killed or maimed. Provided, that nothing herein shall be construed so as to prevent any person, or persons, from recovering damages from any railroad corporation for its negligent killing or injury to any cattle, or other domestic animals, at spurs, sidings, Y's, crossings and turntables."

While the statute is general in its terms and includes all [1, 2] the property of railway companies, it not only impliedly recognizes an exception of public highway crossings, but the necessities of the case, as well as other provisions of law, forbid the maintenance of fences transecting highways. In requiring the installment of cattle-guards at crossings, it implies that they must be effective to keep animals off the

track, and this requires the maintenance of wing fences on both sides of the highway. The nature of the business of railways and the relation it bears to the public, implies a further exception of tracks at depots and in the station grounds where passengers and freight are received and discharged, and public convenience requires free and unobstructed access to the station buildings and tracks. There must be included, also, space sufficient to afford reasonable convenience in the switching of cars, the making up of trains and supplying engines with fuel and water. Further, employees are required to pass almost continuously back and forth along the tracks in the station grounds in the performance of their duties. That these must be left open and free from obstruction is founded upon the danger which would necessarily result to employees were wing fences or cattle-guards or other similar obstructions maintained in the station grounds. Their freedom from danger while the employees are performing their duties is more important than the safety which such obstructions would afford to straying animals. These several exceptions are recognized by the courts and text-writers generally, and grow out of the very necessities of the case. (3 Elliott on Railroads, sec. 1194; *Knop* v. *Chicago, M. & St. Paul Ry. Co.,* 57 Mont. 288, 187 Pac. 1020, and authorities cited.)

The proviso in the latter part of the section seems to imply still another exception, but as it is not pertinent to the case in hand, we do not stop to determine its application.

It will be noticed that railway companies are neither [3, 4] expressly nor impliedly excused from exercising ordinary care to avoid killing animals which stray into their depot station grounds. Their liability in such cases depends upon whether they appear to have been guilty of negligence in handling their trains, just as their liability arises at public crossings and other places at which fences are not required to be maintained. In such cases, the fact of killing or injury being proved, the presumption established by section 4309

prevails, and the burden is upon them to rebut it. No presumption may be indulged against a company, however, because of the location and character of the fences it maintains about its station grounds, if it chooses to fence them, or at any other place where it is not required to do so, if the fences meet all requirements as to their sufficiency. As pointed out by Mr. Elliott in his work on Railroads, if an animal has entered upon the property of a railway company at a point where no fence is required and is injured at a point where none is required, or even at a place where one is required, there is generally no liability, in the absence of willfulness or negligence. (3 Elliott on Railroads, sec. 1201.)

No fence was required, either at the place where the mare [5] in question gained entrance or at the point where she was injured. The contention made by plaintiff is that the fences along the tracks to the east created a trap from which the mare could not escape. In fact, there was a space on either side' of the track at the point where she was injured, and there was ample room for her to keep out of the way of defendant's train. In the absence of evidence tending to show that the fences constituted a trap, there is no presumption that they did.

It being conceded that the engineer, Harper, was not negligent in the handling of his train, the facts are not sufficient to justify the conclusion that the defendant was at fault. The judgment must therefore be reversed. It is so ordered.

*Reversed.*

ASSOCIATE JUSTICES REYNOLDS, COOPER, HOLLOWAY and GALEN concur.