(No. 4547.  April 28, 1927.)

## J. F. FERRELL, Respondent, v. OREGON SHORT LINE RAILROAD COMPANY, a Corporation, Appellant, and C. W. KARNES, Respondent, v. OREGON SHORT LINE RAILROAD COMPANY, a Corporation, Appellant.

[256 Pac. 104.]

RAILROADS—REQUIREMENT TO FENCE—EXEMPTIONS—EVIDENCE.

1. A railroad company's station grounds are exempt from the requirement of C. S., sec. 4814, that it shall fence on each side of its road.

2. Whether switch, treated as part of station ground, was reasonably necessary for transaction of railroad company's business there, the protection of its employees, and the accommodation of the public, and therefore an essential part of the station grounds, not required to be fenced, was a question of fact.

3. The reasonable necessity of a switch as part of the station ground, not required to be fenced, was established by the positive testimony, so that in the absence of testimony to the contrary it was error to submit it to the jury.

APPEAL from the District Court of the Seventh Judicial District, for Washington County.  Hon. B. S. Varian, Judge.

Actions for damages.  Judgments for plaintiffs in both cases.  Consolidated and appealed.  *Reversed, with directions.*

Geo. H. Smith, H. B. Thompson and J. H. McEvers, for Appellant.

A railroad company is not required to fence its depot and station grounds.  (C. S., sec. 4814; *Bernardi v. Northern*

Publisher's Note.

1. Applicability of fencing laws to stations and depot grounds, see notes in 53 Am. Rep. 19; 5 L. R. A. 737; 8 L. R. A. 139; 11 L. R. A. 427; 7 L. R. A., N. S., 202; 27 L. R. A., N. S., 796. See, also, 11 R. C. L. 897.

See Railroads, 33 Cyc., p. 1190, n. 14, p. 1307, n. 56.

*Pacific Ry. Co.,* 18 Ida. 76, 108 Pac. 542, 27 L. R. A., N. S., 796; *Ft. Worth & D. C. Ry. Co. v. Decatur Cotton Seed Oil Co.* (Tex. Civ. App.), 179 S. W. 1104; *Reid v. San Pedro, L. A. & S. L. R. Co.,* 42 Utah, 431, 132 Pac. 253; *Mills & Le Clair Lbr. Co. v. Chicago, St. P. M. & O. Ry. Co.,* 94 Wis. 336, 68 N. W. 996; *Miller v. Chicago, B. & Q. R. Co.,* 18 Wyo. 209 (Ann. Cas. 1912D, 626, 105 Pac. 908.)

Depot and station grounds include all grounds necessary for switching and making up of trains, together with a sufficient space beyond the switches to permit trains to clear and to allow train crews to walk from the train to the switch without passing over cattle-guards (3 Elliott on Railroads, 3d ed., sec. 1709, p. 655; 11 R. C. L., sec. 33, p. 899; *Denver & R. G. R. Co. v. Siminoe,* 65 Colo. 73, 173 Pac. 541; *Stewart v. Pennsylvania Co.,* 2 Ind. App. 142, 50 Am. St. 231, 28 N. E. 211; *Kyser v. Kansas City St. J., C. B. & R. Co.,* 56 Iowa, 207, 9 N. W. 133; *Prickett v. Atchison, T. & S. F. Ry. Co.,* 33 Kan. 748, 7 Pac. 611; *Bird v. Michigan Cent. R. Co.,* 145 Mich. 706, 108 N. W. 1100; *Rabidon v. Chicago & W. M. Ry. Co.,* 115 Mich. 390, 73 N. W. 386, 39 L. R. A. 405; *Schneekloth v. Chicago & W. M. Ry. Co.,* 107 Mich. 1, 65 N. W. 663; *McGuire v. St. Louis M. & S. E. Ry. Co.,* 113 Mo. App. 79, 87 S. W. 564; *Knop v. Chicago, M. & St. P. Ry. Co.,* 57 Mont. 288, 187 Pac. 1020; *Bowers v. Chicago, M. & St. P. Ry. Co.,* 61 Mont. 200, 201 Pac. 825; *Beaudin v. Oregon Short Line R. Co.,* 31 Mont. 238, 78 Pac. 303; *Chicago, B. & Q. R. Co. v. Hogan,* 30 Neb. 686, 46 N. W. 1015; *Burnham v. Chicago, B. & Q. R. Co.,* 83 Neb. 183, 119 N. W. 235; *St. Louis & S. F. R. Co. v. Brown,* 32 Okl. 483, 122 Pac. 136; *Atchison, T. & S. F. Ry. Co. v. McCall,* 48 Okl. 602, 150 Pac. 173; *Wilmot v. Oregon R. R. Co.,* 48 Or. 494, 120 Am. St. 840, 87 Pac. 528, 11 Ann. Cas. 18, 7 L. R. A., N. S., 202; *Harvey v. Southern Pacific Co.,* 46 Or. 505, 80 Pac. 1061; *Gulf C. & S. F. Ry. Co. v. Blankenbeckler,* 13 Tex. Civ. App. 249, 35 S. W. 331; *Gulf C. & S. F. Ry. Co. v. Wallace,* 2 Tex. Civ. App. 270, 21 S. W. 973; *Abbott v. Beaumont S. L. & W. Ry. Co.* (Tex.), 177 S. W. 1052; *Fort*

*Worth & D. C. Ry. Co. v. Decatur Cottonseed Oil Co.* (Tex.), *supra.*)

As affecting the liability of a railroad company for the killing of animals, under the statute requiring a railroad company to fence its right of way, it is the point of entrance upon the right of way that governs liability and not the point of the accident. (*Edie & Son v. Kansas City Southern Ry. Co.,* 133 Mo. App. 9, 112 S. W. 993; *Dorsey v. Chicago, B. & Q. R. Co.,* 175 Mo. App. 150, 157 S. W. 1065; *Eaton v. McNeill,* 31 Or. 128, 49 Pac. 875.)

Where animals are killed by a train on a right of way, the owner can recover under the provisions of C. S., sec. 4814, for the loss thereof only in a case where the animals were killed at a point where the statute requires the railroad company to fence. If the statute does not require the railroad company to fence at the point where the animals were killed, the courts cannot impose this obligation upon the railroad company, even though the railroad had fenced one side of its right of way. (*Bliss v. Oregon Short Line R. Co.,* 34 Ida. 351, 200 Pac. 721; *Dickinson v. Stewart,* 70 Okl. 271, 174 Pac. 233; *Bowers v. Chicago, M. & St. P. Ry. Co.,* 61 Mont. 200, 201 Pac. 825; *Atchison, T. & S. F. R. Co. v. McCall,* 48 Okl. 602, 150 Pac. 173.)

"Under the authorities cited, the question is clearly settled that railroad companies are not required to fence their tracks at stations where passengers are received or discharged." (*Stewart v. Pennsylvania Co.,* 2 Ind. App. 142, 50 Am. St. 231, 28 N. E. 211.)

"The evidence shows that the cow was killed upon the grounds of a station where there was a switch and a sidetrack. The railroad company is not required to fence its track upon depot grounds." (*Kyser v. Kansas City St. J. & C. B. R. Co.,* 56 Iowa, 207, 9 N. W. 133.)

Where the railroad company has laid out station grounds and used them, there is a presumption that they are necessary for station purposes. (11 R. C. L., sec. 34, p. 900; *Wilmot v. Oregon R. R. Co.* (Or.), *supra; Atchison, T. & S. F. Ry. Co. v. McCall* (Okl.), *supra; Mills & LeClair Lbr.*

*Co. v. Chicago, St. P. M. & O. Ry. Co.* (Wis.), *supra; Wolf v. Chicago, M. & St. P. Ry. Co.,* 184 Wis. 193, 199 N. W. 142.)

It is the point of entrance upon the right of way that governs liability and not the point of accident. (*Edie v. Kansas City Southern Ry. Co.,* 133 Mo. App. 9, 112 S. W. 993; *Dorsey v. Chicago, B. & Q. R. Co.* (Mo.), *supra; Eaton v. McNeill,* 31 Or. 128, 49 Pac. 875.)

The burden of proof is on the plaintiff to prove that the animals entered upon the right of way at a point where the railroad company is required to fence. (*Perkins v. Loux,* 14 Ida. 607, 95 Pac. 694.)

"Whether it is the duty of a railroad company to fence its right of way at its depot grounds, is a question of law for the court." (11 R. C. L., sec. 34, p. 900.)

Ed. R. Coulter, for Respondents.

The place on defendant's line of railroad, where the animals in question were killed, being in a farming community, where the railroad passes through, or along inclosed or adjoining cultivated fields or inclosed lands, defendant is required to fence both sides of its track, and to construct and maintain cattle-guards at the end of said fences. (C. S., sec. 4814; Elliott on Railroads, 3d ed., sec. 1709; *Patrie v. Oregon Short Line R. Co.,* 6 Ida. 448, 56 Pac. 82; *Johnson v. Oregon Short Line R. Co.,* 7 Ida. 355, 63 Pac. 112, 53 L. R. A. 744; *Bernardi v. Northern Pacific R. Co.,* 18 Ida. 76, 108 Pac. 542, 27 L. R. A., N. S., 796; *Strong v. Oregon Short Line R. Co.,* 31 Ida. 48, 169 Pac. 179, *Saccamonno v. Great Northern Ry. Co.,* 30 Ida. 513, 166 Pac. 267.)

The defendant is estopped from claiming that it is not compelled by law to fence both sides of its railroad track and build and maintain cattle-guards at the point where the animals were killed. (*Patrie v. Oregon Short Line R. Co., supra; Strong v. Oregon Short Line R. Co., supra; Chicago & E. I. R. Co. v. Guertin,* 115 Ill. 466, 4 N. E. 507.)

Error cannot be predicated on failure to instruct the jury on the question of necessity of use for station purposes of

the appellant's right of way at point where the killing occurred, in the absence of a request for such instruction. (*Strong v. Oregon Short Line R. Co., supra; Joyce Brothers v. Stanfield,* 33 Ida. 68, 189 Pac. 1104.)

T. BAILEY LEE, J.—This appeal involved two separate cases brought to recover damages and attorney's fees for the killing of two cows by one of defendant's trains at Jonathan, Idaho, on May 5, 1923. The complaints alleged in substance that on the specific date one of defendant's trains struck and killed the two cows in question near Jonathan station at a point where defendant was required by C. S., sec. 4814, to fence its right of way; that defendant had failed to do so, and was liable under the statute for the damages caused plaintiffs. The defendant admitted the killing of the animals, but denied they were killed at a place where defendant was by the statute required to fence its tracks and right of way. It alleged they were killed while trespassing on defendant's premises which were by defendant necessarily and actually used as a station grounds; that such premises were unfenced for the purpose of affording access and egress of passengers and freight for transportation, and that by reason thereof it was neither practicable nor feasible for defendant to, and it was not by law required to, maintain fences or cattle-guards at the point where the animals entered upon the right of way or at the point where they were struck and killed.

By agreement the cases were consolidated for trial. At the conclusion of the evidence, defendant moved for a directed verdict, which motion was denied. It then requested that the court give defendant's requested instruction No. 1, instructing the jury to return a verdict in defendant's favor. This request was refused; and the court later denied defendant's motion for judgment *non obstante veredicto.* Upon the verdict returned, judgments for damages and attorney's fees were entered in favor of the respective plaintiffs.

Defendant appealed specifying as error the rulings of the court before mentioned, and the giving by the court at the request of plaintiffs of the instruction hereinafter set out.

The condition of the premises fairly shown by the following plat, and the testimony adduced, would seem to establish the following facts:

(Scale: 400 ft., 1 in.)

The station grounds at Jonathan are bounded on the north for the first 180 or 194 feet from the cattle-guards, C D, to the west point of the Pennington Field, A, by the railroad right of way fence which forms part of the field's inclosure. To the west of this west point of the Pennington field, there is a county road running between the points A G F B. From point A, the right of way is bounded on the north by a county road to point I. There is no fence from A to G, since a public road intervenes. From G to I, there is a private fence. The station grounds are bounded on the west by a highway, I to E. West of this highway are the west cattle-guards. On the south, the station grounds are bounded by the Lincoln Highway, D E. North of this highway and south of the loading platform, there is a wagon road or team way used by the farmers and shipping public. There is no fence from E to D. The Pennington field is private land farmed and pastured, and is fenced all around. The east point of the switch, H, is one foot west of the intersection of the line, A J, with the railroad track.

Point A is located at station 1193 plus 15, while the switch point is at station 1193 plus 16. From the east end of the beet platform to the east point of the switch, H, is 220 feet. At this point, cars are switched in for loading at the beet platform, and when loaded are shoved farther west, and held until switched out at point H. For operating purposes, it is necessary to have a space along the platform and east of point H, in order that two cars may be spotted at the beet dump, and two empties left between the dump and the point of clearance. It is 194 feet, or, according to plaintiffs' testimony, 184 feet from the east switch to the east cattle-guards.

It was testified that good railroading requires a clearance of at least 150 feet from the switch to the nearest cattle-guards; that a minimum of 175 or 180 feet is required at this particular station, since brakemen have to get off and run ahead to throw the switch, traveling not less than 100 feet and incurring serious danger were they compelled to run through cattle-guards. There was further testimony that the cattle-guards must be outside the switch; that otherwise brakemen would have to climb over them or it would be necessary to stop the train, take them on to ride over the cattle-guards, and stop again to let them off to approach the switch.

Plaintiffs live up the road running northwest from the point E I. They testified that on the morning of the accident they turned the cows into the public road. Evidently, then, the cows must have entered the station grounds at the west end where there was no duty to fence. The Karnes cow was found north of the track and about one-third of the distance from point A to the cattle-guards, and the Ferrell cow south of the track nearly opposite. The Karnes cow had come up from the south of the track, and started across about four feet ahead of the east switch. Plaintiffs contended that, inasmuch as defendant had fenced its right of way on the north to point A, it was under duty also to fence on the south and maintain wings and a cattle-guard between the points A and J, at point H. Upon this theory,

the court gave plaintiffs' requested instruction No. 1 which in effect directed a verdict for plaintiffs. The instruction was:

· "You are further instructed that if you find that the defendant constructed and maintained a fence to the west end of the Pennington field, it was its duty to construct and maintain a similar fence on the other or south side of its track opposite thereto, and was its further duty to connect said fences by suitable cross fences and cattle-guards; and, that if the defendant failed so to do and by reason of such failure the animals killed got on the track at said point and were killed, then you shall find for the plaintiffs."

If this proposition is to be conceded, it necessarily follows that there would have to be a switch point farther east and a cattle-guard on the lead where brakemen would have to work, and which would invite accidents.

[1]  In construing statutes similar to our own, which in terms do not exempt railroad companies from the duty of fencing station grounds, the great majority of the courts have held that such statutes carry an implied exemption. Our statute provides that every railroad company shall fence "on each side of its road." Much more inclusive are the California and Montana statutes, both of which contain the provision that railroad companies must fence "on both sides of their track and property." (Cal. Civ. Code, sec. 485; Mont. Rev. Code, 1921, sec. 6540.) Yet the courts of these states have declared that station grounds are exempt from the operation of the statute. (*Baker v. Southern California Ry. Co.*, 114 Cal. 501, 46 Pac. 604; *Knop v. Chicago, M. & St. P. Ry. Co.*, 57 Mont. 288, 187 Pac. 1020.) In the latter case the court said:

"In none of them is contained a provision in express words relieving the railway company from the obligation of fencing all portions of its rights of way, including depot grounds, sidings, spurs, etc.

"Provisions of similar statutes, however, have been frequently construed, and the rule is stated in Elliott on Railroads, secs. 1193 and 1194 .... in accord with the weight

of authority, and which we regard as founded upon sound reasoning, as follows: . . . .

" 'Railroad companies are not required to fence their tracks at their depots and about their station grounds. Where passengers and freight are received and discharged, the public convenience requires that there should be unobstructed access to the buildings and tracks, and therefore fences are not required.' "

These several exceptions are recognized by the courts and text-writers generally and grow out of the general necessities of the case. To the same effect are the Nebraska decisions: *Burnham v. Chicago, B. & Q. R. Co.,* 83 Neb. 183, 119 N. W. 235; *Chicago, B. & Q. R. Co. v. Hogan,* 30 Neb. 686, 46 N. W. 1015, the latter saying:

"It is not believed that the legislature contemplated or intended that a railroad company should fence that part of its station grounds extending outside of the limits of a city, town, or village, when such grounds are necessary for the proper transaction of its business as a common carrier."

This is the rule in Michigan, Texas and Wyoming. (*Rabidon v. Chicago & W. M. Ry. Co.,* 115 Mich. 390, 73 N. W. 386, 39 L. R. A. 405; *Schneekloth v. Chicago & W. M. Ry. Co.,* 107 Mich. 1, 65 N. W. 663; *Gulf C. & S. F. Ry. Co. v. Blankenbeckler,* 13 Tex. Civ. App. 249, 35 S. W. 331; *Miller v. Chicago, B. & Q. R. Co.,* 18 Wyo. 209, Ann. Cas. 1912D, 626, 105 Pac. 908.)

Under a statute requiring a railroad company to fence "on each side of its railroad," the Utah court similarly held. (*Reid v. San Pedro, L. A. & S. L. R. Co.,* 42 Utah, 431, 132 Pac. 253.)

A further multiplication of authority is unnecessary.

[2] In defining "station grounds," the Montana court, in *Bowers v. Chicago, M. & St. P. Ry. Co.,* 61 Mont. 200, 201 Pac. 825, stated:

"There must be included, also, space sufficient to afford reasonable convenience in the switching of cars, the making up of trains and supplying engines with fuel and water. Further, employees are required to pass almost continuously

back and forth along the tracks in the station grounds in the performance of their duties. That these must be left open and free from obstruction is founded upon the danger which would necessarily result to employees were wing fences or cattle-guards or other similar obstructions maintained in the station grounds. Their freedom from danger while the employees are performing their duties is more important than the safety which such obstructions would afford to straying animals.''

A veritable brief on this subject is found in *Atchison, T. & S. F. Ry. Co. v. McCall,* 48 Okl. 602, 150 Pac. 173.

Whether or not the switch at the particular point was reasonably necessary for the transaction of the defendant's business, the protection of its employees, and the accommodation of the public, and therefore an essential part of the station grounds, was a question of fact. (*Wilmot v. Oregon R. R. Co.,* 48 Or. 494, 120 Am. St. 840, 87 Pac. 528, 7 L. R. A., N. S., 202; *St. Louis & S. F. Ry. Co. v. Smith,* 41 Okl. 163, 137 Pac. 714.)

After explaining in detail the necessity of the east switch as at present maintained, defendant's engineer, the witness Perkins, testified that no more ground is left open east of the station than is necessarily required for station use. On cross-examination he testified as follows:

''Q. I stated, if the railroad company would maintain its cattle-guard at the end of the field at point A, and have its switch to connect with the main line at the point of the line C D, at the end of the switch would be approximately two hundred feet from the cattle-guards, would it not? A. Yes, sir.

''Q. And that safety factor for the employees, you are talking about for the employees, would be observed? A. No, sir.

''Q. Why? A. The statement I made is that the cattle-guard should be at least two hundred feet outside, so that a man can get here (indicating on the plat).

''Q. Then the fact is that a cattle-guard should be 200 feet from the switch? A. Yes, on the outside—in this case east of it.''

Roadmaster Ennis testified:

"Q. Why, or is there any reason known to you, an operating point of view, why the cattle-guard at the east end of the station at Jonathan should be where it is with relation to the balance of the layout as it now exists? A. Yes, as an operating convenience and safety measure for men in the performance of their duties at that point.

"Q. Please explain yourself. Why is it necessary as an operating measure and for the safety of the men? A. In setting out and picking up cars or doing switching at the point, the ground between the switch and the present location of the cattle-guard is used by trainmen in running along to pull pins, cutting off cars, etc.

"Q. What is the least space, according to your experience, that can be used with safety for such purpose between the switch and the cattle-grounds? A. I would say at a point like that about a hundred seventy-five or a hundred eighty feet."

On cross-examination, he further testified:

"Q. Could not the track be extended down? A. Yes, it could be.

"Q. It would be a question of cost to the company? A. It would be the unnecessary use and waste of money in building that track, but, in addition it would be the additional and continual delay in trains going back and forth.

"Q. Go ahead. Now have you any more to say? A. For the reason that it would have the additional distance to travel in making each move and the men would have to climb over the cattle-guard or stop the train and get on and ride over and then get off and go to the switch."

Both witnesses have admitted that the switch could have been extended farther east and the present condition avoided, but even at that it would be poor railroading, especially Perkins, who said:

"You could run this track down as far as you want, a half mile. You would have a dead track down there which you could not use, but it would be as safe as this end; but you could not use it for anything."

[3] No independent testimony was produced by plaintiffs showing the switch to be unreasonable; and we think the fact of reasonable necessity was fully established by the positive testimony of the witnesses above quoted.

The instruction given was erroneous, either upon the theory that, the necessary station grounds having been fenced on the north, they should have been fenced on the south, and closed with wings and cattle-guards, or upon the theory that such switch was not a necessary part of such grounds and therefore not exempt.

It is contended that the instruction was warranted by this court's holding in *Strong v. Oregon Short Line R. Co.*, 31 Ida. 48, 169 Pac. 179. That case turns solely upon the provision of C. S., sec. 4814, requiring wings and cattle-guards where the right of way has been fenced to a crossing. There was no crossing in the case at bar.

Defendant's motion for directed verdict should have been granted. Judgment reversed and case remanded, with directions to the trial court to enter judgment for defendant. Costs to appellant.

Wm. E. Lee, C. J., and Budge, Givens and Taylor, JJ., concur.