CHOCTAW, OKLAHOMA & GULF RAILROAD COMPANY v. COKER.

Opinion delivered December 2, 1905.

RAILROAD—OPERATION OF TRAIN—FRIGHT OF HORSE.—A railroad company has authority to operate its trains in the usual and ordinary way, including the right to make all noises incident to the working of its engine and cars, and also the right to give the usual and proper signals of danger, as by the sounding of whistles or the ringing of bells, and, while exercising such right in a reasonable and prudent manner, the railroad company is not liable for injuries occasioned by horses in adjoining fields taking fright at such noises; but if the trainmen in charge of an engine discover a horse frightened and threatening to do injury, they should refrain from doing any heedless, unnecessary or wanton act which will increase the fright or danger, and if they fail to do so the railroad company will be liable for damages occasioned thereby.

Appeal from Yell Circuit Court; JEPTHA H. EVANS, Judge, on exchange of circuits; reversed.

E. B. Peirce and Thos. S. Buzbee, for appellant.

Railroads are not liable for injuries to persons caused by the usual and ordinary noises incident to running of trains. 140 Mass. 79; 56 S. W. 1; 32 N. E. 209. They are only required to use ordinary care, and so to manage their trains as not to carelessly or negligently injure persons on the highway or off their right of way. 60 Ark. 409; 77 Pac. Rep. 231. And train operatives are not bound, before giving the signal, to look and see if there are any persons on the highway. 169 Mass. 305. Instruction No. 3 was misleading, and should not have been given,

without also giving the 6th instruction asked by defendant. Defendant was entitled to specific instructions covering the case from its standpoint.  69 Ark. 134, and cases cited.

*Bullock & Davis,* for appellee.

If the engineer knew the horse was frightened, it was his duty to stop or suspend the signal until it was passed or the danger averted.  60 Ark. 415.  Whether the injury resulted from negligence of the defendant was, under the circumstances of the case, a question for the jury.  26 Ark. 387.

BATTLE, J.  Cordelia Coker, by her next friend, sued the Choctaw, Oklahoma & Gulf Railroad Company, and stated her cause of action as follows:

"Further complaining, the plaintiff states on the 24th day of April, 1901, she was at work on her father's farm, in a field at a point between mile posts numbered 206 and 207, along said railroad track, and that her father and next friend, the said James E. Coker, was in the field near her ploughing a horse, and that about five o'clock of the afternoon of the said 24th day of April, 1901, the west-bound passenger train of the said defendant, Choctaw, Oklahoma & Gulf Railroad Company, on its regular run along its said railroad track at and near the said field aforesaid, ran by where the said plaintiff and her said father were at work, and in so passing and approaching the point last aforesaid the said train of cars with its locomotive was, by the agents and servants of the said railroad company then and there being in charge thereof, so negligently, carelessly and improperly operated, run and conducted on said road as to cause the said horse, then and there being ploughed by the said James E. Coker, to take fright to such an extent that he broke loose from all control, and ran away, and in his fright knocked down the plaintiff with great force, dragged the said plough against and over her body, causing the blade thereof, to cut, gash, and wound the plaintiff in the thigh, and dragging her along the ground, and otherwise bruising and wounding the body of her, the said plaintiff; and all this, without any default, negligence or carelessness on the part of her, the said plaintiff.  That said negligence consisted of a failure of the said defendant's agents and servants to ring the bell or blow the whistle at the public crossing next near the plaintiff's field, and

when the said train had so carelessly entered the said field and when opposite or near the plaintiff, and seeing the said horse already frightened, they unnecessarily blew the whistle, and gave additional fright to the said horse."

The defendant answered, and specifically denied each allegation of the complaint. The plaintiff recovered judgment.

The evidence adduced at the trial tended to prove the following facts:

"Plaintiff, at the time of the injury complained of, was working with her father and others in her father's field. The road of defendant ran through the field. The right of way was one hundred feet wide, and inclosed by a fence. The road approached the field from the east, on a curve from a northerly direction, and became straight about the time it entered the field; then turned again on a slight curve to the north. The field was nearly a half mile wide." "On the day of the accident, defendant's west-bound train, running about thirty-five miles an hour, passed through the field." Plaintiff's father was plowing in the field near the railroad. His horse became frightened by the approach of the train, and the father was with much effort holding him until the whistle of the train was blown after it had passed him about seventy-five feet, when the horse ran away, dragging the plow after him, running over plaintiff and injuring her. She was knocked down, and the plow caught her; and she was dragged some distance, and severely wounded in the thigh. The evidence as to the fireman or engineer seeing the father and the horse just before or at the time the whistle was blown is in conflict."

The court gave to the jury the following among other instructions over the objections of the defendant:

"The law requires the defendant to ring the bell or sound the whistle eighty rods before reaching a public crossing, and to continue doing one or the other until the crossing is passed. Under this statute the sounding of the whistle at any point required by the law will not make the defendant liable for any injury that may ensue from it unless the operatives of the engine who sound the whistle know, or reasonably knew, that by so doing injury will reasonably and proximately ensue."

And refused to give the following at the request of the defendant:

"You are instructed that defendant's engineer was not guilty of negligence in blowing the whistle in Coker's field, unless you also find that said engineer knew or had reason to believe that the blowing of said whistle would frighten the horse driven by Coker."

The instruction given was calculated to mislead the jury. They might have concluded from it that the operatives of the engine should have seen Coker and his horse at or about the time the whistle was blown, and reasonably have known that the horse would run away and injure some one. The instruction refused should have been given to prevent such an error.

"A railroad company has authority to operate its trains in the usual and ordinary way, including the right to make all noises incident to the working of its engines and cars, and also the right to give the usual and proper signals of danger, as by the sounding of whistles or the ringing of bells; and, while exercising such right in a reasonable and prudent manner, the railroad company is not liable for injuries occasioned by horses" in adjoining fields taking fright at such noises. But if the operatives of the engines of trains discover a horse frightened and attempting to run away with a wagon or plow, or threatening to do any other injury, they should recognize the situation, and refrain from doing any heedless, unnecessary or wanton act which will increase the fright or danger; and if they failed to do so, the railroad company will be liable for damages occasioned thereby.

Reverse and remand for a new trial.