**ATCHISON, T. & S. F. RY. CO. v. HUSTON.**

No. 15706—Opinion Filed Sept. 15, 1925.

**1. Railroads—Animals on Track Where Fence not Required—Care Required.**

When animals come upon a railway track at a place not required by law to be fenced, such as station grounds, the whole duty of the railway company is to use ordinary care and diligence to avoid injuring them after discovering their peril.

**2. Same—Nonliability for Damages to Wagon and Team Left on Station Grounds.**

A railway company which operates its train up to the point of accident in a prudent and ordinary manner is not guilty of any negligence which will render it liable for the killing of a team and the damages to a wagon and harness, where such team and wagon are left unattended in close proximity to the main track of the railway company within station grounds and become frightened solely by reason of the unexpected appearance of the train and the usual and ordinary noises incident thereto.

(Syllabus by Jones, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Pawnee County; Edwin R. McNeill, Judge.

Action by T. E. Huston against the Atchison, Topeka & Santa Fe Railway Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Cottingham, McInnis & Green, Frank G. Anderson, and M. M. Gibbens, for plaintiff in error.

L. V. Orton, for defendant in error.

Opinion by JONES, C. This action was instituted in the district court of Pawnee county, Okla., by the plaintiff, defendant in error, against the defendant, plaintiff in error, to recover the sum of $600, damages alleged to have been sustained by the plaintiff, Huston, by means of the negligent killing of a team of horses and injury to his wagon and harness by one of defendant's passenger trains in the station grounds at Apperson, Okla.

The plaintiff was a teamster and was engaged in hauling oil pipe or casing, and at the time the injury complained of was sustained, had gone to Apperson for the purpose of securing a load of casing, which was stacked between the main track of defendant railway company and the team track, about 150 feet from the point where the team track or switch joined the main track, and about 1 800 feet from the depot on said main line.

On the day of the accident plaintiff, together with two other teamsters, had driven up to the stack of casing. The plaintiff's team being to the rear of the other two teams, the drivers, including the plaintiff, stopped their teams and left them standing hitched to their wagons unattended, near to, and adjacent to the pile of casing, and had gone up to the casing and were engaged in counting the number of joints of pipe for the purpose of determining the number of joints to be placed on each wagon or load, and while so engaged, one of defendant's passenger trains approached from the west

or northwest, and was not discovered by the plaintiff until within about 200 feet of where the teams were standing. There seems to have been a string of cars standing on the switch or loading track, which to some extent obstructed the view of plaintiff, and likewise obstructed the view of the agents or employes operating the train, preventing them from seeing the teams as soon as they might have otherwise. On the approach of the train, the teams seem to have become frightened and the drivers attempted to reach their respective teams, but the team of the plaintiff being furthest removed from where the drivers were standing, plaintiff was unable to get to his team in time to prevent them from attempting to cross the railway track in front of the approaching train. The teams were standing practically parallel to the main track and facing the approaching train, and plaintiff's team turned to the right and crossed the track, and before they had succeeded in crossing the first rail the train struck them, killing one of the horses immediately and seriously injuring the other, which necessitated its being killed, and injured the harness and wagon.

The plaintiff specifically alleges four different elements of negligence: (1) That the defendant was negligent in unloading and stacking the pipe in a dangerous place; (2) that the defendant was negligent in failure to provide a hitching post; (3) that the defendant was negligent in running its train at an excessive rate of speed; and (4) that the defendant was negligent because it failed to ring the bell and sound the whistle as required by statute. And plaintiff further affirmatively alleges:

"That the plaintiff in no way contributed to his damages and he did all in his power to prevent his team from getting on the track in front of the train, but was unable to do so."

To the petition of plaintiff, the defendant filed its answer in the nature of a general denial, and further answering avers that the plaintiff was negligent in leaving his team and wagon standing near the defendant's right of way without tying or hitching the same, and was negligent in failing to keep within a reasonable distance of said team, and at such a distance as would enable him to have reached and controlled the team while the train was passing, and that plaintiff's negligence resulted in the injury sustained, and was the proximate cause of the damages sustained. On the trial of the case to the court and jury, a verdict was rendered by the jury for plaintiff for the sum

of $450, and judgment was rendered by the court in accordance therewith; motion for new trial was filed and overruled, from which order and judgment appellant prosecutes this appeal.

Various specifications of error are assigned and appellant presents his cause under two heads or propositions:

(1) "When animals come upon a railway track at a place not required by law to be fenced, such as station grounds, the whole duty of the railway company is to use ordinary care and diligence to avoid injuring them after discovering them coming upon the track."

(2) "A railway company which operates its train up to the point of accident in a prudent and ordinary manner is not guilty of any negligence which will render it liable for the killing of a team and the damages to a wagon and harness, where such team and wagon are left unattended in close proximity to the main track of the railway company within station grounds and becomes frightened solely by reason of the unexpected appearance of the train and the usual and ordinary noises made by the train."

These two propositions are so closely related that we shall treat them as one and the same. Aside from the facts heretofore stated, the record discloses that there was no whistling post or public crossing at or near the place where the injury was sustained which would have necessitated the giving of signals by the train crew; that the accident occurred about 600 yards from the depot and within the city limits and the station grounds; that the train was running at a rate of approximately 35 miles per hour, and from the evidence this seems to have been the usual rate of speed. The evidence further discloses that as soon as the team was discovered by the employes of the defendant company, the whistle was blown, and we think the evidence is sufficient to show beyond controversy that the bell was ringing at all times herein mentioned. The emergency brakes were applied and the train reduced to a speed of about 20 miles per hour at the time the team was struck, and so far as we are able to determine from the facts, as disclosed by the record, everything was done that could have been done to stop the train and avoid the injury, after the perilous position of the team was discovered by the trainmen.

We find nothing in the record to show that the element of negligence alleged, as to the unloading and stacking the pipe at the point where same was stacked, constitutes negligence, and we do not understand

that railway companies are negligent by reason of their failure to erect a hitching post. The other propositions of negligence relied on are excessive speed and neglect to give signal. These are questions of fact, and while the evidence is very unsatisfactory, and we think wholly insufficient to establish an excessive rate of speed, there is possibly sufficient evidence as to whether or not the whistle was blown or the bell rung to justify the court in submitting that question to the jury, and this court is bound by the findings of the jury on facts of this nature; however, we do not regard this question as being decisive of the rights of parties in this case.

This court has repeatedly held that where stock is killed or injured, within station or yard limits or city limits, where there is no duty upon the railway company to fence its track, the only duty upon the railway company, its agents, and employes is that they shall use ordinary and reasonable care to avoid an injury, after the animal is discovered in a perilous position by the employes.

In the case of St. Louis & S. F. R. Co. v. Brown, 32 Okla. 483, 122 Pac. 136 in the syllabus of the opinion the following rule is announced:

"In an action against a railway company to recover for a cow killed, by its train at a place where the herd law is in force, it is error to instruct the jury that it is the duty of those operating its trains to keep a constant and proper lookout to discover cattle and other stock that may be on its track or in a dangerous proximity thereto. In such cases, the duty of defendant's employes is to exercise ordinary care to avoid injuring the animals after their peril is discovered."

In the case of St. Louis & S. F. R. Co. v. Smith, 41 Okla. 314, 137 Pac. 357, the following rule is announced in the syllabus of the opinion:

"In an action against a railroad company for killing trespassing animals, negligence will not be presumed, in the absence of statute, from the mere fact of accident, which is as consistent with the presumption that it is unavoidable as it is with negligence.

"In the absence of negligence, a railroad company is not liable for animals injured or killed, when they come upon the track at a place where it is not required by law to be fenced, such as station grounds.

"In an action against a railroad company for the negligent killing of stock, where the plaintiff's right of recovery depends upon defendant's negligence, and where there is

no evidence tending to prove negligence, and no circumstances from which negligence might be reasonably inferred, it is the duty of the court to direct a verdict in favor of defendant."

In the body of the opinion, reference is made to the Brown Case, supra, wherein the court makes a statement as follows:

"Plaintiff's mule was unlawfully at large, and was a trespasser upon the tracks of the defendant company, and in such case, as was said in St. Louis & S. F. R. Co. v. Brown, supra, the correct rule is that the railroad company is required to exercise only ordinary care to avoid injuring trespassing animals after they are discovered on or in dangerous proximity to the track." Citing a long line of Oklahoma authorities.

The same rule is followed in the case of A. T. & S. F. Ry. Co. v. McCall, 48 Okla. 602, 150 Pac. 173, and in the case of Midland Valley Ry. Co. v. Bryant, 37 Okla. 206, 131 Pac. 678, it is said:

"It is not the danger * * * the animals were in that constitutes the test of liability, but the knowledge of such danger and the consequent failure to exercise ordinary care to prevent the injury."

In the case of Dickinson v. Stewart, 70 Okla. 271, 174 Pac. 233, this court reaffirms the rule as announced in the case heretofore referred to, and in the case of McAdoo, Director General of Railroads, v. McCartney, 87 Okla. 97, 209 Pac. 654, which is a case very much like the one at bar, the court found that the defendant was not liable, and under the second proposition heretofore cited appellant cites the case of Geren v. St. Louis, I. M. & S. Ry. Co., 99 Ark. 226, 137 S. W. 1100, which is a case almost identical with the case at bar, and in passing upon the question the court said:

"It is the duty of one either in approaching or in standing near to a railroad track to keep his team in hand so as to control it on the approach of a train; and if he leaves them standing in such close proximity to a railroad track at a time that he knows trains are likely to pass, or are passing, and afterwards, when they become frightened, attempts to control them, but is unable to do so, and injury is caused thereby, he will be guilty of negligence barring him from a recovery, unless the animals are frightened by some wanton or willful act done on the part of the servants of the railroad company. Moore v. K. C., etc., Rapid Transit Co., 126 Mo. 265, 29 S. W. 9; 33 Cyc. 1155. A railroad company is not liable because animals which are left in close proximity to a railroad track where trains are likely to pass are frightened merely by the approach of the trains, where there is no negligence in the operation thereof, or

in the failure to exercise due care to avoid the injury.

"A railroad company has the right to use and operate its trains in the usual and ordinary manner, which includes the right to make all noises incident to the proper handling of its engines; and, if it is not operating its train in a negligent manner, it would not be liable because a team left standing in proximity to the track was frightened by the train. In such event a railroad company would only be liable, after the discovery of the fright and danger of the animal, in failing to exercise ordinary care to avoid injury. C., O. & G. Ry. Co. v. Coker, 77 Ark. 174, 90 S. W. 999."

Many other authorities are cited following the same rule, but we deem it unnecessary to encumber the opinion with further citations. It might be contended in this case that the team was not at large, and a team harnessed and hitched to a wagon is not running at large in the sense that the term is often applied to stock on the range or trespassing upon the lands of others without being attended or under the control of anyone, but so far as the application of the law is concerned, when plaintiff left his team unattended without hitching or securing them in any way, and removed himself from the team at such a distance as he did in this case, and left them standing unattended on the right of way of defendant's railway company, and at a point where he should have reasonably expected the approach of a train at any time, such conduct and circumstances are equivalent to running at large. There was nothing to restrain the team or prevent it from going wherever it desired, and so far as a proper application of the law is concerned, we think they should be treated in the same manner as though they had been entirely loose and unattended, and should be treated in the same manner as though they had strayed upon the grounds of the railway company and sustained injury.

If we are correct in this conclusion, it necessarily follows that the plaintiff is not entitled to recover, for there is no evidence contradicting the testimony of the train crew that everything possible was done to avoid the injury after the team was discovered, and while there is a conflict in the testimony as to whether or not the whistle was sounded and the bell rung, it is also evident from the record that there was no condition existing, no public highway or crossing immediately at or near the point where the injury occurred, which under the law would have necessitated such signals, and the mere fact that cars were standing on the loading track or switch track, which possibly obstructed the view, in our judgment does not constitute negligence. Railway companies have a perfect right to place their cars on the side tracks, and station grounds, and yards, and so long as they do not obstruct the view of persons traveling along highways approaching public crossings and streets, they cannot be charged with negligence; and under the authorities cited, the case should be reversed and remanded to the trial court with directions to set aside the judgment formerly rendered for the plaintiff and render judgment for the defendant.

By the Court: It is so ordered.

Note.—See under (1) 33 Cyc. pp. 1164, 1179. (2) 33 Cyc. pp. 1166, 1167.