MISSOURI PACIFIC RD. CO., THOMPSON, TRUSTEE, *v*. HAYES.

4-5313                                        122 S. W. 2d 945

Opinion delivered December 19, 1938.

*Thomas B. Pryor, David R. Boatright* and *W. L. Curtis,* for appellant.

*Rains & Rains,* for appellee.

HUMPHREYS, J. This is an appeal from a judgment rendered against appellants in favor of appellee in the circuit court of Crawford county for injuries received to two head of his stock while attempting to cross a bridge designated as No. 14 on appellants' main line of railroad at and in Greenwood Junction in Sequoyah county, Oklahoma. It was alleged in the complaint that appellants constructed fences at the junction so as to create a pocket into which stock might wander without any opening for them to get out except to cross bridge No. 14 which had no floor upon which animals might walk except boards on one side for the use of its employees or other persons who might cross same. It was particularly alleged that no stock guards were erected at the entrance of the pocket to keep stock from walking into it, and that shortly after the mare and mule belonging to appellee entered this pocket a northbound train of appellants pulled into Greenwood Junction, and frightened the stock and caused them to run into the north end of the pocket and that in attempting to cross the bridge, they fell into it, and the mare broke her left hind leg, and the mule skinned and sprained its legs.

The main defenses interposed were that the location of the bridge involved and referred to in the complaint was within the yard limits and station grounds at Greenwood Junction, Oklahoma, and for that reason the right-

of-way fencing statutes of the state of Oklahoma did not apply to the case, since, under said law appellants were not required to fence said grounds and yards; and the denial that after the stock were discovered in the alleged pocket, a northbound train of appellants frightened the stock and caused them to run to the north end of said pocket and attempt to cross the bridge.

After the evidence was introduced appellants requested a directed verdict in their favor which was refused by the court, appellants' theory being that under the undisputed evidence no liability was shown, and that the judgment should be reversed, and the cause dismissed.

The accident happened on the night of the 16th of October, 1937, after the animals had entered upon the right-of-way of appellants through an opening in the fence complained of. They had gotten out of a pasture owned by appellee, and had wandered about a mile and a half from his home along a public road running across appellants' main line, and just before they were injured were trespassing upon appellants' right-of-way. The injury occurred in the state of Oklahoma, and the Oklahoma law governs as to any liability on the part of appellants.

Section 11966 of the Oklahoma Statutes of 1931 provides: "It shall be the duty of every person or corporation owning or operating any railroad in the state of Oklahoma to fence its road except at public highways and station grounds with a good lawful fence."

It will be observed that in the state of Oklahoma a corporation owning or operating a railroad therein is required to fence its road except at public highways and station grounds. In construing the statute it was said in the case of *A. T. & S. F. Ry. Co.* v. *Huston,* 111 Okla. 274, 239 Pac. 472, that: "When animals come upon a railway track at a place not required by law to be fenced, such as station grounds, the whole duty of the railway company is to use ordinary care and diligence to avoid injuring them after discovering their peril." And in the case of *Davis* v. *Wyskup,* 97 Okla. 239, 223 Pac. 357, it is said: "It is a well-settled rule that the only duty resting

upon a railroad company is to use ordinary care to prevent injury to trespassing animals, after the discovery of their presence and position of danger.''

Under the aforesaid section of the statute and the construction placed upon it by the Supreme Court of Oklahoma, there could be no liability to appellee by appellants, unless appellants failed to use ordinary care to prevent injuring the animals after they were discovered in a perilous position.

There is no lookout statute in Oklahoma, and no statute raising a presumption of negligence from the mere fact that it killed trespassing animals in the operation of its trains.

Since appellee's animals were trespassing upon appellants' right-of-way at a place where appellants were not required to fence against them, we must look to the record to see whether after discovering the animals in a perilous position they used ordinary care to prevent injuring them.

The record does not reflect the time of day or night the mare and mule entered upon the right-of-way of appellants, no one having seen them until they were seen by the engineer, M. C. Miller, who testified, in substance, as follows: He was on the engine on the night of October 16, 1937, when a mare and mule got on bridge or culvert No. 14, at or in Greenwood Junction in Oklahoma which was not very far from the depot. He first stopped his engine near the depot, and he and the crew remained at that point ten or fifteen minutes without moving the engine. At that time they did not see the mare and mule, nor did he see them until he got back in the cab and started to move it at which time he observed them near the bridge or culvert on the left side of the track walking upon the track and onto the bridge through which the mare fell. The mare walked the length of the bridge before she fell, and the mule walked to the opposite end, and when the mare did not get up the mule turned and went back. He then moved the engine up close to the bridge so that he and the crew could have light to take the mare out of the bridge.

We think the reasonable inference deducible from the engineer's testimony is that after he discovered the animals approaching the bridge, and practically upon it he did not continue to move the engine, but after the mare fell through the bridge he moved the engine up close to it so that the crew might have light to get her out. The culvert or bridge was only a short distance from the depot where the engine had been standing. After starting the engine and discovering the animals, the only thing the engineer could do to prevent injuring them was to wait and see whether they would succeed in crossing the bridge without falling through. During the interval the mule did succeed in walking across the bridge and returning without falling through, but the mare was not so fortunate. She fell through and broke a leg. Had the engineer blown the whistle or sounded the bell or continued to move the train the noise would likely have frightened the animals, and cause them to run across instead of walk across the bridge. Of course, running across the bridge would have enhanced their perilous position. We think in the exercise of ordinary care to prevent injuring the animals the engineer did the practical and reasonable thing to wait and see whether the animals would safely clear the bridge. Certainly, after the mare failed to do so and got caught in the bridge, the sensible thing for the engineer to do was to move the engine up closer to the bridge to light it up so the crew might get the mare out and off of same.

On account of the error in not instructing a verdict for appellant, the judgment is reversed, and the cause is dismissed.